IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| FIDELITY & GUARANTY LIFE INSURANCE CO., | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO.: WDQ-13-0040 |
| UNITED ADVISORY GROUP, INC., et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Fidelity & Guaranty Life Insurance Co. ("Fidelity") sued United Advisory Group, Inc. (d/b/a Qintera Financial Group, or "Qintera") and others[1] (collectively, the "Defendants") for breach of contract and unjust enrichment. ECF No. 1. On January 11, 2013, Fidelity moved for a preliminary injunction ("PI") preventing Qintera from "pursuing" an action pending in Illinois state court[2] and preventing the Defendants from initiating any legal action with respect to the parties' Development Loan Agreement in any court other than this one.

---

[1] Joseph Roosevans and James Stoddard.

[2] *Qintera Fin. Grp. v. Fidelity & Guar. Life Ins. Co.*, No. 13-L-0004 (Cir. Ct. Ill. 20th filed Jan. 3, 2013) (the "Illinois action").

ECF No. 7.  A hearing was held on Thursday, January 24, 2013.

For the following reasons, the motion will be denied.

I.  Background[3]

This case arises out of an alleged contractual relationship between Fidelity and the Defendants about sales of insurance products.  ECF No. 1 ¶ 1.

On or about June 21 and 22, 2012, Fidelity representatives met with Stoddard and Roosevans[4] in Baltimore, Maryland to negotiate terms of a development loan agreement (the "Loan Agreement").  ECF No. 1 ¶ 21.  The Loan Agreement was "made" as of August 1, 2012.  Loan Agreement, ECF No. 1-1 at 2 (para. 1).[5] Under the agreement as modified,[6] Fidelity agreed to lend Qintera

---

[3] The facts are taken from the complaint (ECF No. 1), the complaint's supporting documents, and this Court's recollection of the January 24 hearing ("Hr'g").

[4] Stoddard was Qintera's President; Roosevans was, and allegedly remains, Qintera's chief executive officer.  *See* ECF No. 1-1 at 4; ECF No. 1 ¶ 18.

[5] The Loan Agreement apparently modified a separate "Business Development Loan Agreement" ("Note"), also dated August 1, 2012, "pursuant to which Borrower has promised to pay the principal sum of $500,000 with interest thereon . . . according to the terms of the Note."  ECF No. 1-1 at 2 (second para.).  Fidelity has not produced a copy of this Note.  *See* ECF No. 12 at 3.
    Roosevans signed the Loan Agreement for Qintera on August 1, 2012 in Illinois; Stoddard signed the Loan Agreement for Qintera on August 1, 2012 in Florida; and Fidelity signed the Loan Agreement on August 14, 2012 in Maryland.  *See* ECF No. 1-1 at 4-6.

[6] *See supra* note 5.

$500,000 and the Defendants, "jointly and severally,"[7] agreed to repay that amount with interest on or before the "maturity date." ECF No. 1 ¶ 2; ECF No. 1-1 at 2. Paragraph 1(a) of the Loan Agreement defined "Maturity Date" as "12/31/2014, or such earlier date as the Note may become due by acceleration or demand." ECF No. 1-1 at 2. Under paragraph 1(f), "[t]ermina-tion" of Qintera[8] provided Fidelity an "automatic right to accelerate or demand full payment of the loan." *Id.* at 3. Further, Fidelity's failure to "exercise any rights" as to any uncured default or Qintera's termination "shall not be considered a waiver of any of [Fidelity's] rights under this Agreement." *Id.* (¶¶ 1(e), (f)).[9]

Also on August 1, 2012, Stoddard signed a producer/agency form on Qintera's behalf, which acknowledged that he had "received, read and agree[d] to be bound by the terms of [Fidelity's] Producer Agency/Agreement." Producer/Agency Form,

---

[7] Qintera asserted that Stoddard and Roosevans are not parties to the Loan Agreement, because they signed on Qintera's behalf. *See* ECF No. 12 at 3; *supra* note 5. The Loan Agreement expressly stated that Stoddard and Roosevans are joint and several principals of Qintera. ECF No. 1-1 at 2 (para. 1).

[8] "Termination" apparently means "termination of the business relationship"--as formalized in a producer/agency agreement--between Fidelity and Qintera. *See* ECF No. 1 ¶¶ 6, 24; ECF No. 1-1 at 3 (¶ 1(f)), 10; *see also infra*.

[9] The Loan Agreement added a "[f]orgiveness feature" to the Note, under which the outstanding balance would be reduced by 100% if Qintera achieved $10 million in "Index UL TAP production" by December 31, 2014. ECF No. 1-1 at 2 (¶ 1(c)).

ECF No. 1-1 at 8.  By its terms, the producer/agency agreement (the "Producer Agreement") was "made and entered into" in the State of Maryland and to be governed by Maryland law.  Producer Agreement, ECF No. 1-1 at 16 (¶¶ 27, 28).[10]  Paragraph 29 of the Producer Agreement contained a forum selection clause, which provided:

> The parties hereto mutually agree that all suits and special proceedings brought with respect to this Agreement, any other agreement or document received or delivered in connection with this Agreement *or with respect to any aspect of our relationship* shall be brought only in the courts of the State of Maryland located in the City of Baltimore and of the United States District Court for the District of Maryland - Northern Division . . . and not in any other court(s).

*Id.* (emphasis added).

On August 23, 2012, Fidelity wired $500,000 to Qintera's account at Midland State Bank in Effingham, Illinois.  ECF No. 1 ¶ 3.  Between October 11 and December 14, 2012, Qintera made "certain interest payments" on the loan.  *Id.* ¶ 4.

On October 30, 2012, Fidelity terminated its relationship with Qintera by letter and demanded payment of the loan.  ECF No. 1 ¶¶ 6, 24; Hr'g.[11]  Fidelity and Qintera entered into negotiations regarding a repayment schedule.  ECF No. 1 ¶ 25.

---

[10] Fidelity attached an unsigned copy of the Producer Agreement to the complaint.  *See* ECF No. 1-1 at 10-17.  Fidelity alleges that the agreement was signed electronically.  ECF No. 1 ¶ 16; Hr'g.

[11] Fidelity has not indicated why its relationship with Qintera was terminated.  *See generally* ECF No. 1; Hr'g.

However, Qintera refused to pay the principal, which remains outstanding. *Id.* ¶¶ 4, 7, 26. On January 3, 2013, Fidelity's counsel notified Qintera's counsel by telephone of her intention to file suit; the same day, Qintera filed the Illinois action, alleging that Fidelity fraudulently induced Qintera into executing the Loan Agreement. *Id.* ¶ 8; ECF No. 12 at 1; *see supra* note 2.

On January 4, 2013, Fidelity filed suit in this Court on the basis of diversity jurisdiction,[12] alleging two counts of breach of contract[13] and one count of unjust enrichment. ECF No. 1.[14] The complaint sought damages against the Defendants, jointly and severally, for $500,000 plus interest accrued to the

---

[12] Fidelity is a Maryland corporation with its principal place of business in Baltimore. ECF No. 1 ¶ 11. Qintera is an assumed business name for United Advisory Group, Inc., which is a Delaware corporation with its principal place of business in Illinois. *Id.* ¶ 12. Stoddard is a resident of Florida. *Id.* ¶ 13. Roosevans is a resident of Illinois. *Id.* ¶ 18.

[13] Count 1 alleged breach of contract against the Defendants; Count 2 alleged breach of contract against Stoddard and Roosevans individually. *See* ECF No. 1 at 6-7. Count 2 specifically alleged that Stoddard and Roosevans entered into the Loan Agreement with "fraudulent intent" by materially misrepresenting Qintera's financial status, as well as their intentions "with respect to the use of the loan proceeds." *Id.* ¶¶ 35-36. Fidelity alleged entitlement to pierce the corporate veil and obtain relief from Stoddard and Roosevans because of their fraud and role as Qintera's "alter egos." *Id.* ¶ 40.

[14] Qintera was served with the Summons and Complaint on January 9, 2013. ECF No. 6. Stoddard was served on January 16, 2013. ECF No. 11. Roosevans has not been served. *See* ECF No. 8; Docket.

date of judgment.  *Id.* at 9.  The complaint also sought

attorney's fees and costs.[15]  *Id.*  On January 11, 2013, Fidelity

moved for a preliminary injunction and emergency hearing.  ECF

No. 7.  On January 22, 2013, Qintera opposed Fidelity's motion.

ECF No. 12.

II. Analysis

Fidelity seeks a preliminary injunction preventing Qintera

from pursuing the Illinois action and preventing the Defendants

from pursuing any future legal action in any court other than

this one.  ECF No. 7 at 1; *see* Hr'g.[16]  Two preliminary

---

[15] Under paragraph 3 of the Loan Agreement, the Defendants and
their affiliates "hereby indemnify and agree to defend and hold
[Fidelity] harmless from and against any costs, damages,
judgments, fines, and other expenses (including but not limited
to attorney's fees and court costs) relating to this Agreement."
ECF No. 1-1 at 3.

[16] As to Fidelity's request for a prefiling injunction, the All
Writs Act, 28 U.S.C. § 1651(a), provides federal courts with the
authority "to limit access to the courts by vexatious and
repetitive litigants." *Cromer v. Kraft Foods N. Am., Inc.*, 390
F.3d 812, 817 (4th Cir. 2004).  Certainly, "[s]uch a drastic
remedy must be used sparingly . . . consistent with
constitutional guarantees of due process of law and access to
the courts." *Id.*  "Thus, a judge should not in any way limit a
litigant's access to the courts absent exigent circumstances,
such as a litigant's continuous abuse of the judicial process by
filing meritless and repetitive actions." *Id.* at 817-18
(internal quotation marks omitted).
    "In determining whether a prefiling injunction is
substantively warranted, a court must weigh all the relevant
circumstances, including (1) the party's history of litigation,
in particular whether [the party] has filed vexatious,
harassing, or duplicative lawsuits; (2) whether the party had a
good faith basis for pursuing the litigation, or simply intended
to harass; (3) the extent of the burden on the courts and other

considerations--aside from the traditional preliminary injunction analysis--preclude this Court from enjoining Qintera's pursuit of the Illinois action: the Anti-Injunction Act and general principles of comity.

A. The Anti-Injunction Act and Principles of Comity

1. Anti-Injunction Act

Qintera argued that the Anti-Injunction Act bars this Court from granting Fidelity's request for injunctive relief as to the Illinois action. ECF No. 12 at 2, 5. Fidelity conceded that the Anti-Injunction Act "cautions" enjoining state proceedings, but contended that the Act does not apply because it has requested this Court to enjoin the *parties* rather than the Illinois court. Hr'g.

---

parties resulting from the party's filings; and (4) the adequacy of alternative sanctions." *Cromer*, 390 F.3d at 818. None of these factors is present here. First, there is no evidence that any of the Defendants previously filed vexatious, harassing, or duplicative lawsuits on the contracts at issue. *See id.* Fidelity's blanket assertion that the Illinois action is "wholly improper and frivolous"--unsupported by any judicial ruling to that effect--is insufficient to satisfy *Cromer*'s second element. Hr'g; *cf. Kalos v. Centennial Sur. Assocs., Inc.*, No. CCB-12-1532, 2012 WL 6210117, at *6 (D. Md. Dec. 12, 2012). The cumulative burden on the parties is not, to date, substantial. *See infra* Part II.B.2 (cost of defending second lawsuit is not irreparable harm); *see also Cromer*, 390 F.3d at 818. Finally, simply warning the Defendants that continued, duplicative filings in this matter may lead to sanctions appears sufficient to protect Fidelity's and the courts' interests. *Cf. Kalos*, 2012 WL 6210117, at *6. Thus, Fidelity's request for a prefiling injunction will be denied. For the remainder of this Memorandum Opinion, references to Fidelity's motion are references to Fidelity's motion to enjoin the pending Illinois action.

The Anti-Injunction Act, 28 U.S.C. § 2283 (the "AIA"), "limits the ability of federal courts to derail state litigation."[17]   The AIA bars a federal court from granting an injunction to stay proceedings in a state court except when (1) expressly authorized by statute; (2) necessary to aid the court's jurisdiction; or (3) required to protect or effectuate the court's judgments.   28 U.S.C. § 2283; *Balunsat v. Cecil Cnty. Gov't*, No. RDB-12-0360, 2012 WL 6681914, at *3 (D. Md. Dec. 21, 2012).   If the requested injunction is not within one of the exceptions, the AIA "absolutely prohibits . . . all federal equitable intervention in a pending state court proceeding . . . regardless of how extraordinary the particular circumstances may be."   *Mitchum v. Foster*, 407 U.S. 225, 229 (1972).   Indeed, "a federal court is barred by § 2283 from enjoining a state court action even when the state court action is a compulsory counterclaim in the federal action."[18]

Fidelity has requested this Court to interfere with an action currently pending in Illinois state court; plainly, this request implicates the AIA.   *See* 28 U.S.C. § 2283.   Fidelity cannot escape the AIA's bar by seeking to enjoin Qintera rather

---

[17] *Aristud-González v. Gov't Dev. Bank for P.R.*, 501 F.3d 24, 27 (1st Cir. 2007).

[18] *A.B. ex rel. Kehoe v. Hous. Auth. of S. Bend*, No. 3:11 CV 163 PPS, 2011 WL 2692966, at *2 (N.D. Ill. July 8, 2011) (internal quotation marks omitted); *id.* (collecting cases).

than the Illinois court; "the prohibition of § 2283 cannot be evaded by addressing the order to the parties." *Atl. Coast Line R.R. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970).[19] Otherwise, the Act "would have [] no force." *Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1019 (7th Cir. 1991). Thus, the AIA is applicable here.

Fidelity's motion did not address the AIA. *See generally* ECF No. 7-1.[20] At the hearing, Fidelity did not contend--and the Court does not find--that any exception to the AIA applies. *See* Hr'g.[21] Thus, the AIA precludes this Court from enjoining Qintera's pursuit of the Illinois action.

---

[19] *See also Okla. Packing Co. v. Okla. Gas & Elec. Co.*, 309 U.S. 4, 9 (1940) ("That the injunction was a restraint of the parties and was not formally directed against the state court itself is immaterial."); *In re Am. Honda Motor Co., Inc., Dealerships Relations Litig.*, 315 F.3d 417, 439 (4th Cir. 2003) ("[The Anti-Injunction Act's prohibition on injunctions] extends to indirect injunctions against parties.").

[20] Fidelity argued that the "first filed rule" "should not be enforced here due to the Defendants' egregious actions of racing to the court house in Illinois when they knew the filing of this action was imminent." ECF No. 7-1 at 5. The "first-filed rule" arises in cases where similar actions were successively filed in multiple federal courts, generating motions to transfer venue under 28 U.S.C. § 1404(a). *See, e.g., Allfirst Bank v. Progress Rail Servs., Corp.*, 178 F. Supp. 2d 513, 518 (D. Md. 2001). The doctrine does not affect the Anti-Injunction Act analysis.

[21] Fidelity's requested injunction is not expressly authorized by statute. *Cf., e.g., Faye v. High's of Balt.*, 541 F. Supp. 2d 752, 759 (D. Md. 2008) (removal statutes expressly authorize injunctions of state court proceedings). An injunction also is not necessary to aid this Court's jurisdiction. *Cf., e.g., Am. Honda*, 315 F.3d at 439 (explaining that the exception most often

2. Principles of Comity

Even if an exception to the AIA applied here, this fact would not "qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding." *Mitchum*, 407 U.S. at 243.[22] These principles "work[] independently to prevent a federal court's interference in a state proceeding." *Balunsat*, 2012 WL 6681914, at *4. State courts are "presumed competent to resolve federal issues." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 150 (1988). It follows that state courts are equally competent to resolve basic issues of contract law--an area traditionally within their purview. This remains true even if a state court must apply another state's contract principles. *Cf., e.g., In re WorldCom, Inc. Sec. Litig.*, Nos. 03 Civ.4498, 04 Civ.233, 2005 WL 2403856, at *2 (S.D.N.Y. Sept. 30, 2005) (noting that state courts routinely apply other states' laws).

---

applies when a federal court first obtained jurisdiction over a *res* in an *in rem* action and the same federal court seeks to enjoin suits in state courts involving the same *res*, and to prevent obstructing multi-district litigation). Finally, there is no judgment to effectuate. *See Bryan v. BellSouth Commc'ns, Inc.*, 492 F.3d 231, 236-37 (4th Cir. 2007).

[22] *See also Zurich Am. Ins. Co. v. Super. Ct. for Cal.*, 326 F.3d 816, 824 (7th Cir. 2003) ("[E]ven if the injunction is authorized by one of the [AIA's] exceptions, a district court must still determine whether an injunction is an appropriate exercise of its authority, recognizing the respect due the courts of a sovereign state.") (internal citations omitted)).

Illinois state courts are presumed competent to adjudicate contractual claims--even if that may require application of Maryland or another state's law.  Thus, principles of comity counsel the denial of Fidelity's motion.

B. Preliminary Injunction

A preliminary injunction is an "extraordinary remed[y] involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (internal quotation marks omitted).  Because issuing a preliminary injunction "requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way," "[t]he danger of a mistake in this setting is substantial." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994) (internal quotation marks omitted).

To obtain a preliminary injunction, the movant must demonstrate that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities favors him; and (4) an injunction is in the public interest.[23]  The movant must show more than a

---

[23] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 130

"grave or serious question for litigation"; instead, he bears the "heavy burden" of making a "clear showing that [he] is likely to succeed at trial on the merits." *Real Truth*, 575 F.3d at 347, 351. All four elements must be satisfied. *Id.* at 346.

1. Likelihood of Success on the Merits

Fidelity argued that it is likely to succeed on the merits because "[the] Defendants have acknowledged that they owe the debt." ECF No. 7-1 at 4. Qintera countered that Fidelity has produced "absolutely no evidence that it is entitled to recoup its investment in Qintera" because it has not submitted copies of the Note referenced in the Loan Agreement, a valid termination letter, or a signed Producer Agreement. ECF No. 12 at 2, 7. Qintera also denied that "it agreed to or is bound by the Producer Agreement's forum selection clause in pursuing the Illinois action." *Id.* at 4. Because Fidelity's motion is predicated upon the Producer Agreement's forum selection clause, "likelihood of success on the merits" refers to whether the forum selection clause is valid and applicable to the Illinois action.[24]

---

S. Ct. 2371 (2010), *reinstated in relevant part on remand*, 607 F.3d 355 (4th Cir. 2010) (per curiam).

[24] *See, e.g.*, *Linsco/Private Ledger Corp. v. Maurice*, No. 3:07-0183, 2007 WL 869720, at *7 (M.D. Tenn. Mar. 21, 2007) (finding that the plaintiff had showed "a likelihood of success on the merits of its contention that the forum selection clause requiring arbitration in Boston is valid and should be

As a preliminary matter, the Court must determine what
state's law governs this diversity action.  Under Maryland
choice-of-law principles,[25] "'[a]bsent a choice-of-law provision
in [a] contract, [Maryland] courts have applied the rule of lex
loci contractus to matters regarding the validity and
interpretation of contract provisions.'"[26]  "Under this
principle, the law of the jurisdiction where the contract was
made controls its validity and construction."  *TIG*, 2012 WL
6652756, at *9 (internal quotation marks omitted).  "[A]
contract is made where the last act necessary to make the
contract binding occurs."  *Konover Prop. Trust, Inc. v. WHE
Assocs., Inc.*, 790 A.2d 720, 728 (Md. Ct. Spec. App. 2002).

Here, two contracts are at issue: The Producer Agreement

---

enforced"); *Ciena Corp. v. Nortel Networks Inc.*, No. 2:05 CV 14,
2005 WL 1189881, at *3-7 (E.D. Tex. May 19, 2005) (discussing
likelihood of success on the merits on the applicability of, and
defenses to, the forum selection clause and concluding that the
defendant was "likely to prevail on its argument that [the
plaintiff] breached the forum selection clause by filing the ITC
action").  *But see Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*,
No. CIV 10-1020 JB/LFG, 2010 WL 5559750, at *14-25 (D.N.M. Nov.
30, 2010) (discussing likelihood of success on the merits of the
underlying claim *and* as to applicability of the forum selection
clause), *aff'd*, 651 F.3d 1355 (Fed. Cir. 2011).

[25] A federal court exercising diversity jurisdiction must apply
the choice-of-law principles of the state in which the federal
court is located.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313
U.S. 487, 496 (1941).

[26] *TIG Ins. Co. v. Monongahela Power Co.*, No. 2842, 2012 WL
6652756, at *9 (Md. Ct. Spec. App. Dec. 21, 2012) (*quoting Am.
Motorists Ins. Co. v. ARTRA Grp., Inc.*, 659 A.2d 1295, 1301 (Md.
1995)).

and the Loan Agreement.   The Producer Agreement governs the "relationship" between Fidelity and Qintera, *see* ECF No. 1-1 at 10; the Loan Agreement governs the terms of the particular loan at issue, *see* ECF No. 1-1 at 2-3.   The Producer Agreement provides that, "*This Agreement* is governed by the laws of the State of Maryland."   ECF No. 1-1 at 16 (¶ 27) (emphasis added). The parties' choice of law is presumably enforceable.[27]   By contrast, the Loan Agreement contains no choice-of-law provision.   *See generally* ECF No. 1-1 at 1-3.   Thus, the question becomes where the Loan Agreement was "made."   *TIG*, 2012 WL 6652756, at \*9.   The evidence on this point is unclear.   The Loan Agreement apparently modified a preexisting Business Development Loan Agreement, which has not been submitted to the Court.   *See* ECF No. 1-1 at 2 (paras. 2-3).   The Loan Agreement's terms were allegedly negotiated in Maryland on June 21 and 22, 2012.   ECF No. 1 ¶ 14.   Paragraph 1 of the agreement provides that it is "made" as of August 1, 2012.   ECF No. 1-1 at 2.   The parties signed the Loan Agreement in different states and on different days.   *See* ECF No. 1-1 at 1-3.

This Court will not determine what law applies to the forum selection clause because the standard as to the enforceability of such clauses is the same under Maryland, Illinois, and

---

[27] *See Meena Enters., Inc. v. Mail Boxes Etc.*, No. DKC 12–1360, 2012 WL 4863695, at \*6 n.8 (D. Md. Oct. 11, 2012).

federal law.[28]   Forum selection clauses are prima facie valid.

*Zapata*, 407 U.S. at 10.[29]   This presumption of enforceability may

be overcome if:

> (1) [the clause's] formation was induced by fraud or
> overreaching; (2) the complaining party will for all
> practical purposes be deprived of his day in court
> because of the grave inconvenience or unfairness of
> the selected forum; (3) the fundamental unfairness of
> the chosen law may deprive the [complaining party] of
> a remedy; or (4) . . . enforcement would contravene a
> strong public policy of the forum state.[30]

Qintera has provided no facts that establish that the

Producer Agreement's forum selection clause is invalid.[31]

Additionally, the clause applies to all suits brought with

---

[28] *See CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d
757, 771 (D. Md. 2009) ("Under both Maryland and federal law,
the standard announced by the [U.S.] Supreme Court . . . in *M/S
Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), applies for
analyzing the enforceability of forum selection clauses."); *see
also IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*,
437 F.3d 606, 611 (7th Cir. 2006) ("At the black-letter level,
Illinois law concerning the validity of forum selection clauses
is materially the same as federal law.").

[29] *See also Mercury Coal & Coke, Inc. v. Mannesmann Pipe & Steel
Corp.*, 696 F.2d 315, 317 (4th Cir. 1982) ("If the specification
of a particular forum is reasonable, another court should not
consider it an affront to its judicial power, but should respect
the provision as the responsible expression of the parties'
intent.").

[30] *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996)
(internal quotation marks omitted).

[31] To the extent that Qintera argues it was fraudulently induced
into executing the Producer Agreement, this allegation is
insufficient to overcome the enforceability of the clause at
issue.  *See Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir.
1997) ("Fraud and overreaching must be specific to a forum
selection clause in order to invalidate it.").

respect to "*any aspect*" of the relationship between Fidelity and Qintera.  ECF No. 1-1 at 16 (¶ 29) (emphasis added); *see id.* at 8.  The Illinois action--which alleges that Fidelity fraudulently induced Qintera into executing a Loan Agreement, *see* ECF No. 12 at 1--is within this category.[32]

Fidelity has clearly shown a likelihood of success on the merits of its claim that the forum selection clause is valid and applies to the Illinois action.

2. Irreparable Harm

Fidelity argued that Qintera's pursuit of the Illinois action "would force Plaintiff to defend an action in a foreign state when the parties had mutually agreed to jurisdiction and

---

[32] At the hearing and in its opposition, Qintera emphasized that neither the Producer Agreement nor the Loan Agreement incorporated by reference the other document.  ECF No. 12 at 4, 7; Hr'g.  "The absence of an integration clause or even mention of the Producer Agreement is evidence that the Loan Agreement is a stand-alone agreement which contains neither a forum selection nor a governing law clause."  ECF No. 12 at 4, 7.  The contracts are not as distinct as Qintera suggests: they were "made" on the same day (August 1, 2012), involved the same entities (Fidelity and Qintera), and appear to address related subjects.  *Compare* ECF No. 1-1 at 2-6 (Loan Agreement), *with* ECF No. 1-1 at 8-17 (Producer Agreement); *see also Liamuiga Tours v. Travel Impressions, Ltd.*, 617 F. Supp. 920, 927 (E.D.N.Y. 1985) ("[W]he[n] two or more written instruments between the same parties concerning the same subject matter are contemporaneously executed, they will be read and interpreted together.").  Moreover, assuming that the Loan Agreement stands alone, the scope of the Producer Agreement's forum-selection clause is sufficiently broad to cover it.  *Cf. Drews Distrib., Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347 (4th Cir. 2001) ("[T]he reach of an arbitration clause is not restricted to those causes of action brought under the contract containing the clause, unless the parties draft a clause so restricted in scope.").

venue in Plaintiff's home state of Maryland." ECF No. 7-1 at 4.

Fidelity identified three categories of harm: (1) an undermining

of the parties' contractual terms; (2) a risk of inconsistent

verdicts; and (3) legal costs associated with defending the

Illinois action. Hr'g. Qintera objected that, at most,

Fidelity would have a monetary claim for expenses. ECF No. 12

at 2, 8-9.

In addition to establishing a likelihood of success on the

merits, a preliminary injunction movant must make a clear

showing of irreparable harm that is "actual and imminent."

*Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 283 (4th Cir.

2002) (internal quotation marks omitted). Assuming that

Fidelity will suffer "harm" if the Illinois action proceeds,

that harm does not appear to be imminent or irreparable. First,

to the extent that the Illinois action violates the Producer

Agreement's forum selection clause, Fidelity could move to

dismiss on that ground. *See Walker v. Carnival Cruise Lines,*

*Inc.*, 889 N.E.2d 687, 691 (Ill. App. Ct. 2008) (*citing* 735 Ill.

Comp. Stat. 5/2-619(a)(9)). Second, a risk of inconsistent

verdicts is neither impending nor unavoidable; this Court could

stay the pending case or abstain from adjudicating it. *See*

*infra* Part II.C.[33] Finally, monetary harm is not irreparable.

---

[33] *See also United States v. Rural Elec. Convenience Co-Op Co.*,
922 F.2d 429, 438 (7th Cir. 1991) (explaining that, in the

*See Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994).[34]

The AIA bars this Court from enjoining Qintera's pursuit of the Illinois action. Principles of comity also favor denial of Fidelity's motion. Finally, even if the requested injunctive relief were authorized and advisable, Fidelity is not entitled to a preliminary injunction because it has not shown irreparable harm that is actual and imminent.[35] Fidelity's motion for a preliminary injunction will be denied.

C. Abstention

In its opposition to Fidelity's motion, Qintera also requested this Court to abstain from exercising jurisdiction under *Colorado River Water Conservation District v. United*

---

private law context and absent "deleterious res judicata consequences," inconsistent judgments "do not necessarily amount to irreparable harm").

[34] *See also, e.g.*, *EEOC v. Consol. Freightways Corp. of Del.*, 312 B.R. 657, 660 (W.D. Mo. 2004) ("[C]ourts generally do not find irreparable harm based on litigation expenses alone."). *But see Gen. Protecht*, 2010 WL 5559750, at *26 ("The Court finds that, absent injunctive relief, the Plaintiffs will likely suffer the irreparable harms of . . . . the inconvenience and hardship of litigating on two fronts.").
In support of its argument as to litigation expenses, Fidelity claimed that Illinois contract law lacks a specific provision providing for attorney's fees. Hr'g. Even if true, the alleged harm will not occur unless the Illinois court applies Illinois law and, upon resolution of the motions, rules in favor of Fidelity. None of these actions is imminent.

[35] Because Fidelity has not shown irreparable harm, this Court need not balance the equities or address whether an injunction is in the public interest. *See Real Truth*, 575 F.3d at 346.

*States*, 424 U.S. 800 (1976) or, alternatively, to stay this case until the Illinois action is resolved.   ECF No. 12 at 10-11.

Under the *Colorado River* abstention doctrine,[36] a district court may abstain from exercising jurisdiction "in the exceptional circumstances where a federal case duplicates contemporaneous state proceedings, and wise judicial administration, giving regard to conservation of judicial resources, and comprehensive disposition of litigation clearly favors abstention." *Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332, 340-41 (4th Cir. 2002) (internal citation and quotation marks omitted).  The Supreme Court has "declined to prescribe a hard and fast rule" for determining whether *Colorado River* abstention is appropriate. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1983).  The "threshold question" is "whether there are parallel federal and state suits." *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 207 (4th Cir. 2006).  "Suits are parallel if substantially the same parties[37] litigate

---

[36] This doctrine was first recognized in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

[37] "While it is true that the parties in *Colorado River* were not identical to the parties in the 'parallel' state action, at least the federal plaintiff was a party to the state action." *Great Am. Ins. Co.*, 468 F.3d at 208.  By contrast, a "lack of similarity of the parties" exists when the defendant in a federal action is not a defendant in the state action. *Id.*

substantially the same issues[38] in different forums." *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 464 (4th Cir. 2005) (internal quotation marks omitted).[39]

This case appears to parallel the Illinois action because Fidelity and Qintera are parties to both, and both arise out of the same Loan Agreement. *See Great Am. Ins.*, 468 F.3d at 207-08. However, more information about the Illinois action is

---

[38] *Compare Vulcan Chem. Techs., Inc.*, 297 F.3d at 340 (federal action was parallel to state action when both sought "to apply the same law in deciding whether to enforce or vacate the same arbitration award"), *with Great Am. Ins. Co.*, 468 F.3d at 208 (claims not parallel when issues litigated in state court action would not include facts necessary to prove federal claim, and remedies sought in federal and state actions were "entirely different"); *Gannett Co. v. Clark Constr. Grp., Inc.*, 286 F.3d 737, 743 (4th Cir. 2002) (federal contract suit was not parallel to state lien action, because the suits "involve[d] different issues with different requisites of proof," and the actions sought different remedies).

[39] If parallel suits exist, the Court "must carefully balance" six factors: (1) "whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others," (2) the relative convenience of the federal forum, (3) "the desirability of avoiding piecemeal litigation," (4) the order in which state and federal courts obtained jurisdiction, and the progress achieved in each action, (5) the presence of federal law issues, and (6) whether the state forum would adequately protect the parties' interests. *Chase Brexton Health Servs., Inc.*, 411 F.3d at 463-64 (*citing Moses H. Cone Mem'l Hosp.*, 460 U.S. at 15-16, 24-27). "No one factor is necessarily determinative," and the court's decision must not "rest on a mechanical checklist." *Colo. River*, 424 U.S. at 818-19. Rather, the court must apply the factors in "a pragmatic, flexible manner with a view to the realities of the case at hand," *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21, taking into account "both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise," *Colo. River*, 424 U.S. at 818.

needed before this Court can determine whether the actions are truly parallel, rendering abstention appropriate.   Qintera should file a separate motion to abstain; Fidelity will then have the opportunity to oppose that motion in writing.

III. Conclusion

For the reasons stated above, Fidelity's motion for a preliminary injunction will be denied.

_____1/25/13_____
Date

_____
William D. Quarles, Jr.
United States District Judge