IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

FIDELITY & GUARANTY LIFE
INSURANCE CO.,

    Plaintiff,

       v.                *   CIVIL NO.: WDQ-13-0040

UNITED ADVISORY GROUP, INC.
d/b/a QINTERA FINANCIAL GROUP,
    *et al.*,

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Fidelity & Guaranty Life Insurance Co. ("Fidelity") sued
United Advisory Group, Inc. d/b/a Qintera Financial Group
("Qintera"), Joseph Roosevans, and James Stoddard,
(collectively, the "defendants") for, *inter alia*, breach of
contract and fraud. ECF No. 1. Pending are Roosevans's motion
to dismiss for failure to state a claim and Fidelity's motion
for leave to amend the complaint. ECF Nos. 29, 48. No hearing
is necessary. Local Rule 105.6 (D. Md. 2011). For the
following reasons, Roosevans's motion will be denied as moot,
and Fidelity's motion will be granted in part and denied in
part.

I.   Background[1]

This case arises from an alleged contractual relationship between Fidelity and the defendants, under which Qintera was authorized to sell Fidelity's insurance products. *See* ECF Nos. 48-1 ¶ 1, 48-5 at 2, 48-8 at 10.  On or about June 21 and 22, 2012, Fidelity representatives met with Stoddard and Roosevans,[2] "part of the group from Defendant Qintera," in Baltimore, Maryland to negotiate the terms of a development loan agreement (the "Loan").  ECF No. 48-1 ¶¶ 16, 21.  During these negotiations, at which Stoddard and Roosevans allegedly "represent[ed] themselves as well as Defendant Qintera," Stoddard and Roosevans "prepared and presented" to Fidelity a "'Business Plan Executive Summary' and an 'Implementation Plan' for Defendant Qintera."  *Id.* ¶¶ 24, 29.  The Executive Summary stated that Qintera will leverage its affiliation with Financial

---

[1] The facts are taken from the proposed amended complaint and its attachments.  ECF No. 48.  For the motion to dismiss for failure to state a claim, the well-pled allegations in the complaint are accepted as true.  *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).  In reviewing the motion to dismiss, the Court may consider allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and authentic.  *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[2] Stoddard was Qintera's President; Roosevans is Qintera's chief executive officer.  *See* ECF Nos. 48-1 ¶¶ 15, 20, 48-3 at 4. Qintera is allegedly an affiliate of Financial Resources of America, of which Roosevans is also President or chief executive officer.  ECF No. 48-1 ¶¶ 20, 30.

Resources of America, Inc. ("FRA") so that it will not "start[]
from scratch" in selling Fidelity's products.[3]  *See id.* ¶ 30
(internal quotations omitted).  For example, the Implementation
Plan stated that Qintera would use many of FRA's policies and
resources in its day-to-day operations.  *See id.* ¶ 37.  The
Executive Summary also stated that FRA would fund $250,000 of
Qintera's start-up expenses.[4]  *Id.* ¶ 45.

The Executive Summary described Stoddard's qualifications
as President of Qintera, and the Implementation Plan assigned
"numerous tasks" for Stoddard to complete for Qintera.  *Id.*
¶¶ 40-41.  By these statements, Qintera and Roosevans allegedly
"misrepresented that Defendant Stoddard would have a major role
in Defendant Qintera despite knowing that they intended to
terminate Defendant Stoddard's participation in Defendant
Qintera."  *Id.* ¶ 42.  Stoddard's participation in Qintera was a
"critical factor" in Fidelity's decision to enter the Loan
agreement.  *Id.* ¶ 44.

The Executive Summary also "contained detailed
representations regarding projected revenue and expenses for

---

[3] FRA, Qintera, and United Advisory Group have their principal
places of business at the same address, the same chief executive
officer and founder (Roosevans), and other common executives and
officers.  *See* ECF No. 48-1 ¶¶ 31-36.

[4] This statement was allegedly false, and "all of the Defendants
knew or should have known that Defendant Qintera was
undercapitalized at the outset."  ECF No. 48-1 ¶ 46.

2012 through 2017." *Id.* ¶ 45. The defendants were allegedly aware that these "financial projections were false as to the potential revenues and expenses of Defendant Qintera," or "had a reckless disregard" for their truth or falsity.[5] *Id.* ¶¶ 46-47. Fidelity relied on these representations in deciding to enter the Loan agreement.[6] *Id.* ¶ 48.

The Loan was "made" as of August 1, 2012. ECF No. 48-3 at 2. Under the agreement, Fidelity agreed to lend Qintera $500,000, and the defendants, "jointly and severally,"[7] agreed to repay that amount with interest on or before the "maturity date." ECF Nos. 48-1 ¶ 2, 48-3 at 2. Paragraph 1(a) of the Loan Agreement defined "Maturity Date" as "12/31/2014, or such

---

[5] Fidelity alleges that the "details regarding which exact revenues and expenses were misrepresented are facts within the exclusive knowledge of" the defendants. ECF No. 48-1 ¶ 56.

[6] Roosevans and Stoddard also allegedly "materially misrepresent[ed] their intentions with respect to the use of the loan proceeds," which they used "for their own personal benefit, and/or for the benefit of other corporations or limited liability companies or other persons, in such a way that Defendant Qintera was severely undercapitalized and doomed to failure." ECF No. 48-1 ¶¶ 57, 69. Exactly how they used the proceeds is allegedly "within the exclusive knowledge of" the defendants. *Id.* ¶ 57.

[7] The Loan document states that the agreement is made "jointly and severally . . . by and among" Fidelity and Qintera, "principals are Joseph Roosevans and Jim Stoddard." ECF No. 48-3 at 2. Roosevans and Stoddard only signed the Loan once, indicating their corporate titles, under the heading "Borrower: Qintera Financial Group." *Id.* at 4.

4

earlier date as the Note[8] may become due by acceleration or demand." ECF No. 48-3 at 2. Under paragraph 1(f), "[t]ermination" of Qintera[9] provided Fidelity an "automatic right to accelerate or demand full payment of the loan." *Id.* at 3. Further, Fidelity's failure to "exercise any rights" as to any uncured default or Qintera's termination "shall not be considered a waiver of any of [Fidelity's] rights under this Agreement."[10] *Id.*

Also on August 1, 2012, Stoddard signed a producer/agency form (the "Producer Form") on Qintera's behalf, which acknowledged that he had "received, read and agree[d] to be bound by the terms of [Fidelity's] Producer Agency/Agreement." ECF Nos. 48-1 ¶¶ 17-18, 48-7 at 2. By its terms, the producer/agency agreement (the "Producer Agreement") was "made

---

[8] The Loan purports to modify the terms of a note. *See* ECF No. 48-3 at 2. However, the defendants allegedly "were aware of the fact that no promissory note existed at the time the loan proceeds were disbursed." ECF No. 48-1 at 3 n.1.

[9] "Termination" apparently means "termination of the business relationship"--as formalized in a producer/agency agreement-- between Fidelity and Qintera. *See* ECF Nos. 48-1 ¶¶ 7, 27, 48-3 at 3, 48-5 at 7-8, 10.

[10] The Loan had a "[f]orgiveness feature," under which the outstanding balance would be reduced by 100% if Qintera achieved $10 million in "Index UL TAP production" by December 31, 2014. ECF No. 48-3 at 2.

and entered into" in the State of Maryland and was to be governed by Maryland law.[11] ECF No. 48-5 at 8.

On August 23, 2012, Fidelity wired $500,000 to Qintera's account at Midland State Bank in Effingham, Illinois. ECF No. 48-1 ¶ 3. Between October 11 and December 14, 2012, Qintera made "certain interest payments" on the loan. *Id.* ¶ 4. However, "[t]he entire principal balance remains outstanding." *Id.*

On October 24, 2012, Fidelity terminated its relationship with Qintera by letter and demanded payment of the loan.[12] ECF Nos. 48-1 ¶¶ 7, 27, 48-4 at 2. Fidelity and Qintera entered into negotiations about a repayment schedule. ECF No. 48-1 ¶ 78. During the negotiations, Fidelity sent Roosevans and Stoddard a draft promissory note, listing Qintera and Roosevans "personally as borrowers." *Id.* Roosevans requested "that the corporate borrower" on the draft note "be changed from Defendant

---

[11] Paragraph 29 of the Producer Agreement contained a forum selection clause, which provided:

> The parties hereto mutually agree that all suits . . . brought with respect to this Agreement . . . *or with respect to any aspect of our relationship* shall be brought only in the courts of the State of Maryland located in the City of Baltimore and of the United States District Court for the District of Maryland— Northern Division . . . and not in any other court(s).

ECF No. 48-5 at 8.

[12] Fidelity has not indicated why its relationship with Qintera was terminated.

6

Qintera" to FRA. *Id.* However, the negotiations were apparently unsuccessful.[13] *See, e.g., id.* ¶ 8.

On January 4, 2013, Fidelity filed suit in this Court on the basis of diversity jurisdiction.[14] Count One alleged breach of contract against the defendants; Count Two alleged breach of contract against Stoddard and Roosevans individually. *See* ECF No. 1 at 6-7. Count Two specifically alleged that Stoddard and Roosevans entered into the Loan agreement with "fraudulent intent" by materially misrepresenting Qintera's financial status, as well as their intentions "with respect to the use of the loan proceeds." *Id.* ¶¶ 35-36. Fidelity alleged entitlement to pierce the corporate veil and obtain relief from Stoddard and Roosevans because of their fraud and role as Qintera's "alter egos." *Id.* ¶ 40. Count Three alleged unjust enrichment against the defendants. *Id.* at 9. The amended complaint adds Count

---

[13] Fidelity's counsel notified Qintera's counsel by telephone of Fidelity's intention to file suit. ECF No. 48-1 ¶ 9. On January 3, 2013, Qintera "raced to the courthouse" to file suit in Illinois state court, alleging that Fidelity fraudulently induced Qintera into executing the Loan agreement. *Id.* The defendants have voluntarily dismissed this suit. *Id.*

[14] Fidelity is a Maryland corporation with its principal place of business in Maryland. ECF No. 48-1 ¶ 13. Qintera is an assumed business name for United Advisory Group, Inc., which is a Delaware corporation with its principal place of business in Illinois. *Id.* ¶ 14. Stoddard is a resident of Florida. *Id.* ¶ 15. Roosevans is a resident of Illinois. *Id.* ¶ 20. FRA is an Illinois corporation with its principal place of business in Illinois. *Id.* ¶ 22.

Four against FRA, alleging that Fidelity "is entitled to collect the debt owed by Defendant Qintera from Defendant FRA as its alter ego," because "Qintera had no mind of its own."[15]  *See* ECF No. 48-1 ¶¶ 75, 79.

On January 25, 2013, following a hearing, the Court denied Fidelity's request to preliminarily enjoin the defendants from proceeding against it in litigation in Illinois.  ECF Nos. 16, 17.  On February 13, 2013, Qintera answered the complaint.  ECF No. 23.  On February 25, 2013, Stoddard answered the complaint. ECF No. 27.

On March 14, 2013, Roosevans moved to dismiss the complaint.  ECF No. 29.  On March 28, 2013, the case was referred to Magistrate Judge Susan K. Gauvey for mediation, which was unsuccessful.  ECF Nos. 34, 44.  On June 18, 2013, Fidelity opposed Roosevans's motion to dismiss and moved to amend the complaint.  ECF Nos. 47, 48.  On July 26, 2013, Qintera and Roosevans opposed the motion to amend.  ECF No. 53. On July 29, 2013, Roosevans replied to Fidelity's opposition to his motion to dismiss.  ECF No. 57.  On August 20, 2013, Fidelity replied to the opposition to its motion to amend.  ECF No. 58.

---

[15] The amended complaint seeks damages of $500,000 against the defendants and FRA, jointly and severally, plus interest accrued to the date of judgment, and attorney's fees and costs.  ECF No. 48-1 at 18.

II. Analysis

A. Legal Standards

1. Motion for Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) instructs that leave to amend should be freely given when justice requires. Leave should be denied only when amendment would unduly prejudice the opposing party, amount to futility, or reward the movant's bad faith.[16] *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008); *Equal Rights Ctr. v. Niles Bolton Associates*, 602 F.3d 597, 603 (4th Cir. 2010).

2. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's

---

[16] Qintera and Roosevans do not assert that Fidelity seeks leave to amend in bad faith.

9

notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability;'" the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

B. Choice-of-Law

1. Contract-Based and Fraud Claims

Fidelity contends that, because the Loan "was negotiated in Baltimore," Maryland, Maryland courts "have a vested interest in seeing that Maryland law is appropriately applied to interpret

and enforce contracts which are made in this state."[17] *See* ECF No. 47 at 6. Qintera and Roosevans do not dispute these allegations and generally apply Maryland law in their briefs. *See, e.g.*, ECF No. 30 at 9. However, in a footnote in his motion to dismiss, Roosevans suggests that the Court might conclude that Illinois law, rather than Maryland law, governs Fidelity's claims. *See* ECF No. 30 at 5 n.2.

When sitting in diversity, a federal court follows the choice-of-law rules of the forum state. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497, 61 S. Ct. 1020, 85 L.Ed. 1477 (1941). Thus, Maryland choice-of-law rules govern.

For contract and unjust enrichment claims, Maryland courts follow the rule of *lex loci contractus*, applying the substantive law where the contract was formed. *Allstate Ins. Co. v. Hart*, 327 Md. 526, 611 A.2d 100, 101 (1992); *RaceRedi Motorsport, LLC v. Dart Mach., Ltd.*, 640 F. Supp. 2d 660, 665 (D. Md. 2009). A contract is formed where the last act required to make it

---

[17] Fidelity also contends, without citation, that Maryland law should be applied, because "Stoddard entered into [the Producer Form] on Defendant Qintera's behalf," which contains a choice of law clause mandating application of Maryland law that applies to disputes about any aspect of Qintera's and Fidelity's relationship. *See* ECF Nos. 47 at 6, 48-5 at 8. However, Fidelity does not allege or argue that Roosevans, in his individual capacity, is bound by the terms of the Producer Form. *See, e.g.*, ECF No. 47 at 6-7.

binding occurs. *Konover Prop. Trust Inc. v. WHE Assocs.*, 142
Md.App. 476, 790 A.2d 720, 728 (Md. Ct. Spec. App. 2002).

In tort cases, like fraud, Maryland applies the *lex loci
delicti* rule. *Philip Morris, Inc. v. Angeletti,* 358 Md. 689,
744, 752 A.2d 200, 230 (2000); *Harte-Hanks Direct
Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Grp., Inc.*, 299 F.
Supp. 2d 505, 526 n.24 (D. Md. 2004). Under that rule, "when [a
tort] occurs in another state[, the] substantive rights of the
parties, even though they are domiciled in Maryland, are to be
determined by the law of the state in which the alleged tort
took place." *Angeletti*, 358 Md. at 745, 752 A.2d at 230
(citation omitted). A tort occurs "where the injury was
suffered, not where the wrongful act took place." *Johnson v.
Oroweat Foods Co.*, 785 F.2d 503, 511 (4th Cir. 1986).

Although the complaint alleges that the Loan was negotiated
in Maryland, it does not allege that the Loan became a binding
contract during these negotiations. *See* ECF No. 1 ¶ 14.
Further, Fidelity alleges that the Loan negotiations took place
on June 21 and 22, 2012, *see id.*, but the Loan document did not
become effective until August 1, 2012, *see* ECF No. 1-1 at 2.
Also, the parties signed the Loan in different states and on
different days. *See* ECF No. 1-1 at 4-6. Thus, the location of
the contract's formation is unclear.

Similarly, Fidelity does not allege where it sustained the injury caused by the defendants' fraudulent misrepresentations. *See, e.g.*, ECF No. 1 ¶ 48. Thus, the Court cannot determine what law governs Fidelity's fraud claim.[18]

Given the "fact-intensive[,] context specific . . . [and] complexity" of the choice-of-law analysis, consideration of what law governs Fidelity's contract-based and fraud claims may be properly deferred until after the parties have engaged in discovery. *Banner Life Ins. Co. v. Bonney*, 2:11CV198, 2011 WL 5027498, at *8 (E.D. Va. Oct. 21, 2011) (noting that many courts defer deciding choice-of-law issues until a later stage in the proceedings after the motion to dismiss stage) (*citing North American Technical Svcs., Inc. v. V.J. Techs, Inc.*, No. 10 CV 1384(AWT), 2011 WL 4538069, at *2 (D. Conn. Sept. 29, 2011)); *Cleaning Auth., Inc. v. Neubert*, 739 F. Supp. 2d 807, 817-18 (D. Md. 2010) (deferring choice-of-law questions to summary judgment stage). As the defendants have not cited any Illinois case to support their opposition to Fidelity's claims,[19] the Court will

---

[18] The amended complaint does not contain additional allegations about the location of the contract's formation or the place where Fidelity suffered injury from the defendants' alleged fraud.

[19] In a footnote, Roosevans states the elements of a breach of contract claim under Illinois law, citing *Prevendar v. Thonn*, 518 N.E.2d 1374, 1378 (Ill. App. Ct. 1988). He contends, without analysis, that "[p]laintiff fails to state a claim under either Maryland or Illinois law." ECF No. 30 at 5 n.2.

13

apply Maryland law to resolve the pending motions and defer

final determination of the choice-of-law issues.[20]  *See Nakell v.*

*Liner Yankelevitz Sunshine & Regenstreif, LLP*, 394 F. Supp. 2d

762, 768 n.2 (M.D.N.C. 2005).

2. Piercing the Corporate Veil

Roosevans cites Delaware law in opposition to Fidelity's

claim that piercing Qintera's corporate veil is appropriate but

gives no authority for applying Delaware law.[21]  *See* ECF No. 5 at

13-14.  Fidelity contends, also without citation, that Maryland

law, not Delaware law, should apply.  *See* ECF No. 47 at 6.

Unlike the other choice-of-law questions, resolution of this

issue will not be aided by further factual development as there

---

[20] If the parties fail to brief choice-of-law in later stages of
these proceedings, the Court will apply Maryland law to resolve
the parties' claims under *Chambco, Div. of Chamberlin
Waterproofing & Roofing, Inc. v. Urban Masonry Corp.*, 338 Md.
417, 421, 659 A.2d 297, 299 (1995).  *Chambco* holds that, even
when another jurisdiction's law clearly controls an issue in the
case, if the parties fail to give the Court notice that they
intend to rely on a different state's law, the Court, in its
discretion, may presume that the other jurisdiction's law is the
same as Maryland law and apply Maryland law.  *See, e.g., Danner
v. Int'l Freight Sys. of Washington, LLC*, 855 F. Supp. 2d 433,
447 (D. Md. 2012) (*citing Chambco*, 338 Md. at 421, 659 A.2d at
299).

[21] Roosevans relies, without authority, on the internal affairs
doctrine in applying Delaware law, "which looks to a business'
state of incorporation for the applicable standards of corporate
governance, to avoid subjecting a corporation to conflicting
demands."  Charles A. Wright & Arthur R. Miller, *Areas of
Competence for the Formulation of Federal Common Law—Conflict
Between State Law and Federal Interests*, 19 Fed. Prac. & Proc.
Juris. § 4515 (2d ed.); *see* ECF No. 57 at 6.

is no dispute that Qintera is a Delaware corporation. *See,*
*e.g.*, ECF Nos. 1 ¶ 12, 23 ¶ 12; *supra* note 21.

Maryland law is not clear about the choice-of-law
principles it applies to veil piercing. *See Ademiluyi v.*
*PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d
502, 514-15 (D. Md. 2013). However, Maryland courts generally
apply Maryland law, rather than the law of the state of
incorporation, to determine whether to pierce the corporate veil
of foreign corporations.[22] Accordingly, because the parties do
not identify any relevant differences between Delaware and
Maryland law,[23] and Maryland courts would likely apply Maryland
law to resolve this issue,[24] the Court will apply Maryland law to

_____

[22] *See, e.g.*, *Antigua Condo. Ass'n v. Melba Investors Atl., Inc.*,
307 Md. 700, 728, 735, 517 A.2d 75, 89, 93 (1986) (New York
corporation); *Ramlall v. MobilePro Corp.*, 202 Md. App. 20, 29-
31, 30 A.3d 1003, 1008-09 (2011) (Delaware corporation);
*Hildreth v. Tidewater Equip. Co., Inc.*, 378 Md. 724, 734, 838
A.2d 1204, 1210 (2003) (New Jersey corporation).

[23] In his reply to Fidelity's opposition to his motion to
dismiss, Roosevans makes several arguments as to why Fidelity's
veil piercing claim fails under Maryland law, citing Maryland
cases. *See* ECF No. 57 at 6.

[24] As both Delaware and Maryland courts generally decline to
pierce the corporate veil without a showing of fraud, it is
unlikely that application of Maryland law will result in a
different outcome than if Delaware law is applied. *See Wallace*
*ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752
A.2d 1175, 1184 (Del. Ch. 1999) ("Effectively, the corporation
must be a sham and exist for no other purpose than as a vehicle
for fraud."); *Mason v. Network of Wilmington, Inc.*, CIV.A.
19434-NC, 2005 WL 1653954, at *3 (Del. Ch. July 1, 2005)
("Delaware Courts . . . require an element of fraud to pierce

15

determine whether to pierce the corporate veil. *See Ademiluyi*, 929 F. Supp. 2d at 514-15 (applying Maryland law of veil-piercing to Delaware corporation, in part, because parties "have not identified any relevant legal principles that might differ in other jurisdictions").

C. Leave to Amend

1. Prejudice

In their opposition to Fidelity's motion, Qintera and Roosevans contend that Fidelity's proposed amendment is prejudicial, because it adds allegations about the parties' repayment negotiations that occurred before Fidelity brought suit. *See* ECF No. 53 at 3. They assert that evidence of these negotiations is inadmissible under Federal Rule of Evidence 408, because they were settlement negotiations, and that Fidelity should thus be denied leave to amend or the Court should strike the paragraphs mentioning the negotiations. *See id.* at 3-4. Fidelity contends that, when the negotiations occurred, Qintera and Roosevans did not dispute their liability on the Loan. ECF No. 58 at 2-3. Thus, these negotiations are outside the scope of Rule 408. *See id.*

---

the corporate veil."); *accord Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 126 Md. App. 294, 307, 728 A.2d 783, 789 (1999) ("Despite the proclamation that a court may pierce the corporate veil to enforce a paramount equity, arguments that have urged a piercing of the veil 'for reasons other than fraud' have failed in Maryland courts.").

In determining whether an amendment is prejudicial, the Court generally considers its nature and timing. *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). For example, an amendment is often prejudicial if it "raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party, [and] is offered shortly before or during trial." *Johnson*, 785 F.2d at 510. However, amendments that "merely add[] an additional theory of recovery to the facts already pled and [are] offered before any discovery has occurred" are not prejudicial. *Laber*, 438 F.3d at 427. Similarly, when "defendant was from the outset made fully aware of the events giving rise to the action," no prejudice can occur from the amendment. *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980).

Here, although the amended complaint contains new allegations about the Loan repayment negotiations, the original complaint referenced the negotiations as well. *See* ECF Nos. 1 ¶ 25, 48-1 ¶ 39. Thus, Qintera and Roosevans were aware "from the outset . . . of the events giving rise to the action." *See Davis*, 615 F.2d at 613. Also, no discovery has been conducted in this litigation, and the defendants may bring a motion to

strike the allegedly inadmissible portions of the complaint.[25]
Accordingly, Qintera and Roosevans have failed to establish that
they will suffer "undue prejudice" if Fidelity's amendment is
permitted.[26]

2. Futility

An amendment is futile if it would fail to withstand a
motion to dismiss. *See Perkins v. United States,* 55 F.3d 910,
917 (4th Cir. 1995).

a. Breach of Contract

To survive a motion to dismiss, "a complaint for breach of
contract must allege facts showing a contractual obligation . .
. and a breach of that obligation." *Swedish Civil Aviation
Admin. v. Project Mgmt. Enters., Inc.,* 190 F. Supp. 2d 785, 791
(D. Md. 2002); *accord Cont'l Masonry Co., Inc. v. Verdel Const.
Co., Inc.,* 279 Md. 476, 480, 369 A.2d 566, 569 (1977).

In the amended complaint, Fidelity alleges that it entered
into an agreement with the defendants, "whereby Plaintiff agreed
to lend Defendant Qintera five hundred thousand dollars

---

[25] Requests for court orders, such as orders to strike portions
of pleadings, must be made by motion. *See* Fed. R. Civ. P.
7(b)(1).

[26] *But see, e.g., Equal Rights Ctr.*, 602 F.3d at 603 (finding
undue prejudice when plaintiff sought to amend complaint to add
a contribution claim "after the close of a three-year long
discovery process and on the eve of the deadline for dispositive
motions").

($500,000), which Defendants Qintera, Stoddard and Roosevans jointly and severally agreed to repay." ECF No. 48-1 ¶ 2. The Loan agreement is attached to the amended complaint.[27] ECF No. 48-3. The preamble states the agreement is "by and among [Qintera], principals are Joseph Roosevans and Jim Stoddard, jointly and severally, (collectively "Borrower") and Fidelity." *Id.* at 2. Although this wording is unclear, construing the amended complaint in Fidelity's favor, it is plausible that this language creates joint and several liability for the Loan for the defendants. The amended complaint also alleges that the defendants "breached the contract by failing and refusing to repay the principal amount of the loan despite due demand having been made." *See* ECF No. 48-1 ¶ 52. Accordingly, Fidelity has sufficiently alleged in the amended complaint that Roosevans had a contractual obligation to Fidelity which Roosevans breached.

Roosevans and Qintera contends that the amended complaint is futile, because "Roosevans did not sign the Loan Agreement in an individual capacity," only on behalf of Qintera.[28] ECF No. 53

---

[27] Roosevans does not dispute the authenticity of the Loan document, or any other document that Fidelity attached to its complaint or amended complaint.

[28] Roosevans also contends that the amended complaint is futile, because "Roosevans did not promise to repay the loan personally," Fidelity alleges that "Roosevans 'was part of the group from Qintera' and thus did not meet with Plaintiff's representatives individually," Fidelity "wired the funds to Qintera's account" and demanded repayment from Qintera, and

19

at 12. Under Maryland law, when a person signs "a contract only in a corporate capacity, and unambiguously indicat[es] that fact on the face of the contract documents, [that person] does not thereby become a party to the agreement." *Curtis G. Testerman Co. v. Buck*, 340 Md. 569, 587, 667 A.2d 649, 658 (1995). Maryland applies "the law of the objective interpretation of contracts" to determine when a contract is ambiguous. *Calomiris v. Woods,* 727 A.2d 358, 363 (Md.Ct.App. 1999). "Under the objective view, a written contract is ambiguous if, when read by a reasonably prudent person, it is susceptible of more than one meaning." *Id.*

Here, the Loan agreement is ambiguous, because even though Roosevans did not sign the agreement personally, the contract includes Roosevans in the definition of "Borrower" and indicates that Roosevans enters the agreement "jointly and severally"[29]

---

Qintera made payments on the loan. ECF No. 53 at 12. However, at the motion to dismiss stage, the Court assumes the truth of the Fidelity's allegations--that Roosevans agreed to assume liability for the $500,000 loan--and finds that they state a plausible claim for relief. In later proceedings, Roosevans may oppose Fidelity's claim with evidence that, despite Fidelity's claims, Roosevans did not have a contractual obligation to Fidelity.

[29] Roosevans asserts that, "[to] the extent [Fidelity] alleges that Roosevans is secondarily liable with Qintera," Maryland's statute of frauds requires a writing signed by Roosevans. ECF No. 30 at 8 n.3. However, even if the statute of frauds does apply, an exception exists whereby "a party can be bound to a contract that it did not sign when the evidence unequivocally indicates that the non-signatory intended to be bound by the

with Stoddard and Qintera.[30]  That Roosevans did not sign the

Loan agreement does not establish, as a matter of law, that he

is not liable under it.[31]  *See Whitmore*, 217 F.3d at *3

(concluding that contract was ambiguous under Maryland law as to

the personal liability of a corporate officer when the contract

stated that the officer was a party to the contract but the

officer did not sign in an individual capacity).

---

contract." *Whitmore v. Hawkins*, 217 F.3d 843, at *4 (4th Cir. 2000) (table) (*citing Residential Warranty*, 728 A.2d at 784). Thus, the statute of frauds does not provide an absolute defense to liability.

[30] Roosevans asserts that the "joint and several" language only refers to Roosevans's and Stoddard's status as principals of Qintera, and thus the language does not create personal liability for them.  *See* ECF No. 57 at 4.  However, "Borrower" is defined "collectively," indicating that Qintera is not the only party agreeing to borrow money from Fidelity.  *See* ECF No. 48-3 at 2.  Thus, the contract is ambiguous, because the language suggests that Roosevans may be a party to the agreement.  *Cf. Whitmore*, 217 F.3d at *3.

[31] In his motion to dismiss, Roosevans contends "that the signing of the Loan Agreement was a condition precedent for the Loan Agreement to be effective."  ECF No. 30 at 9.  Because Roosevans failed to sign the document in his individual capacity, it is not effective as to him personally.  *See id*.  However, there is no language in the Loan agreement that requires the signatures of the parties for effectiveness.  The only clause that references signatures merely states that "the undersigned . . . have executed this Agreement under seal as their free act and deed for the purposes herein contained as of the effective date hereof."  ECF No. 48-3 at 3.  As the referenced "effective date" (August 1, 2012) occurred before the parties signed the Loan, *see id*. at 2, 4-6, this clause suggests that the Loan agreement may have become effective before it was signed, contrary to Roosevans's assertions.

As the amended complaint states a claim for breach of contract, the amendment is not futile. Fidelity's motion for leave to amend Count One will be granted.

### b. Unjust Enrichment

Under Maryland law, unjust enrichment requires: (1) a benefit conferred on the defendant by the plaintiff; (2) a defendant's appreciation or knowledge of the benefit; and (3) the defendant's acceptance or retention of the benefit under circumstances that would make it inequitable for the defendant to retain the benefit without the payment of its value. *Hill v. Cross Country Settlements, LLC,* 402 Md. 281, 295, 936 A.2d 343, 351 (2007).

Fidelity alleges that Roosevans "received and used the loan proceeds of $500,000 for [his] own personal benefit, and/or for the benefit of other corporations or limited liability companies or other persons." ECF No. 48-1 ¶ 69. Fidelity also alleges that it performed all of its obligations under the Loan agreement, Roosevans agreed to repay the $500,000, Fidelity terminated the Loan agreement according to its terms, and Roosevans has not repaid the Loan principal. *See id.* ¶¶ 25-28, 52. Fidelity has sufficiently alleged that Roosevans was unjustly enriched.[32] *See Hill*, 402 Md. at 295, 936 A.2d at 351.

---

[32] Roosevans contends that Fidelity's "allegations that Roosevans obtained and used the loan proceeds is nothing more than

As the amended complaint states a claim for unjust enrichment, the amendment is not futile. Fidelity's motion for leave to amend Count Three will be granted.

c. Piercing the Corporate Veil Because of Fraud

Under Maryland law, the court will pierce the corporate veil to find the corporation's principals liable only when necessary to prevent fraud or to enforce a paramount equity. *Residential Warranty*, 126 Md. App. at 306-07, 728 A.2d at 789; *Travel Comm., Inc. v. Pan Am. World Airways, Inc.*, 91 Md. App. 123, 157, 603 A.2d 1301, 1317 (1992). Fidelity contends that the Court should pierce Qintera's corporate veil to hold Roosevans and Stoddard personally liable for Qintera's debt under the Loan agreement, because of fraud allegedly committed by Roosevans and Stoddard in obtaining the Loan for Qintera. *See* ECF No. 48-1 at 13-15. Qintera and Roosevans argue that the amended complaint "fails to allege a valid claim for fraud," and thus the Court cannot pierce the corporate veil. ECF No. 53 at 8, 10.

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice,

---

speculation and not based on fact." ECF No. 53 at 11. However, at the motion to dismiss stage, the Court presumes the truth of the plaintiff's allegations. *See Brockington*, 637 F.3d at 505. Roosevans's arguments may be properly asserted at summary judgment and/or trial.

intent, knowledge, and other conditions of a person's mind may be alleged generally."[33] The Rule 9(b) heightened standard "requires a plaintiff to plead 'with particularity the circumstances constituting fraud,'" which "include 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (*quoting* Rule 9(b)); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

When a complaint alleges fraud against multiple defendants, Rule 9(b) requires that the plaintiff identify each defendant's participation in the alleged fraud. *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000).

The elements of fraud in Maryland are:

(1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation as made with reckless indifference to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation.

---

[33] "Rule 9(b)'s heightened pleading standard applies to state law fraud claims asserted in federal court." *U.S. ex rel. Palmieri v. Alpharma, Inc.*, 928 F. Supp. 2d 840, 853 (D. Md. 2013) (*citing N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale,* 567 F.3d 8, 13 (1st Cir. 2009)).

*Hoffman v. Stamper,* 867 A.2d 276, 292 (Md. 2005). *"Ordinarily fraud cannot be predicated on statements which are promissory in their nature, and therefore an action for deceit will not lie for the unfulfillment of promises . . . ." Appel v. Hupfield,* 84 A.2d 94, 96 (Md. 1951) (emphasis added). Rather, a contract action is appropriate. *See id.* However "the defendant's deliberate misrepresentation of his existing intentions, whe[n] the misrepresentation was material to the transaction giving rise to the alleged fraud, may form a basis for an action in fraud." *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.,* 665 A.2d 1038, 1048 (Md. 1995). "[M]aking a promise as to a matter material to the bargain with no intention to fulfill it is an actionable fraud." *Gross v. Sussez Inc.,* 630 A.2d 1156, 1161–62 (Md. 1993).

As to the first element of fraud, Fidelity alleges that Qintera, Roosevans, and Stoddard "prepared and presented to Plaintiff a 'Business Plan Executive Summary' and an 'Implementation Plan' for Defendant Qintera" during the Loan negotiations.[34]  ECF No. 48-1 ¶ 29.  Fidelity alleges that these

---

[34] Qintera and Roosevans contend that the statements in the Executive Summary and Implementation Plan were made by Qintera, not Roosevans. ECF No. 53 at 8. However, in deciding whether Fidelity states a claim for relief, the Court presumes the truth of the allegations that Roosevans prepared and presented documents to Fidelity which contained material misrepresent-ations of which Roosevans was aware. *See, e.g.,* ECF No. 48-1 ¶¶ 29, 43; *Boykins,* 637 F.3d at 505.

documents discussed Stoddard's qualifications and "assign[ed]
numerous tasks to be completed for Defendant Qintera by
Defendant Stoddard." *Id.* ¶¶ 40-41. The statements in these
documents "misrepresented that Defendant Stoddard would have a
major role in Defendant Qintera," because Qintera and Roosevans
knew "they intended to terminate Defendant Stoddard's
participation in Defendant Qintera." *Id.* ¶ 42. Fidelity also
alleges that the Executive Summary contained misrepresentations
of "projected revenue and expenses" for 2012 through 2017, and
of FRA's funding of $250,000 in start-up expenses.[35] *Id.* ¶ 45.
These allegations sufficiently identify the content of the
misrepresentations and the circumstances under which they

---

[35] Qintera and Roosevans contend that the identified
misrepresentations cannot support a claim for fraud, because
they were made in "forward looking documents." ECF No. 53 at 8.
Predictions and promissory statements generally are not
actionable as fraud. *See Appel*, 84 A.2d at 96; *Payne v.
McDonald's Corp.*, 957 F. Supp. 749, 761 (D. Md. 1997). Such
statements may be actionable, however when the defendant
"deliberate[ly] misrepresent[s] his existing intentions" in a
matter "material to the transaction." *Alleco*, 665 A.2d at 1048.
Fidelity alleges, *inter alia*, that the "financial projections"
presented to Fidelity "were false" when made and "Defendants
knew or should have known [Qintera] was undercapitalized from
the outset," and that Roosevans misrepresented that Stoddard
"would have a major role" in Qintera, even though he knew that
Stoddard would be terminated. ECF No. 48-1 ¶¶ 42, 46. Further,
Fidelity alleges that it relied on these representations in
executing the Loan agreement. *Id.* ¶¶ 61-62. These allegations
are sufficient to survive a motion to dismiss. *See, e.g.*,
*Alleco*, 665 A.2d at 1048.

occurred,[36] including "apprising[ing Roosevans] of the role[ he]
played in the alleged" fraud, to meet the Rule 9(b) standard.[37]
*Cf. Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1329 (7th Cir.
1994) (assuming fraud allegations were sufficient, because "the
three corporate defendants in this case are related corporations
that can most likely sort out their involvement without
significant difficulty").

As to the second and third elements, Fidelity alleges that
Roosevans knew that the statements in the Executive Summary and
Implementation Plan were false when he presented them to
Fidelity, and that he made the misrepresentations "intend[ing]
Plaintiff to rely upon" them. ECF No. 48-1 ¶ 43. This

---

[36] As Fidelity has attached a copy of the Executive Summary and
Implementation Plan, which contain the alleged misrepresent-
ations, to the amended complaint, Roosevans has "sufficient
notice of the particulars [he] will have to defend against at
trial." *See Storto Enterprises, Inc. v. Exxonmobil Oil Corp.*,
CIV. WDQ-10-1630, 2011 WL 231877, at *7  (D. Md. Jan. 24, 2011)
(*citing Harrison*, 176 F.3d at 784); ECF Nos. 48-8, 48-9.

[37] *See, e.g., Currie v. Wells Fargo Bank, N.A.*, 8:12-CV-02461-AW,
2013 WL 2295695, at *7 (D. Md. May 23, 2013) (concluding that
plaintiffs had stated a claim of fraud, because they "alleged
both approximate and specific dates for many of the alleged
misrepresentations, the content of many of the
misrepresentations, [and] the identity of many of the persons
making the misrepresentations (e.g., various Wells Fargo
representatives, some of whom are named)"); *Penn Mut. Life Ins.
Co. v. Berck*, CIVA DKC 09-0578, 2010 WL 1233980, at *5 (D. Md.
Mar. 23, 2010) (plaintiff stated a claim for fraud, because it
"has adequately identified four misrepresentations and one
omission that are specific, and has adequately stated its basis
of knowledge about each transaction").

allegation is sufficient under Rule 9(b), because the Rule allows "conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive." *See Maheu v. Bank of Am., N.A.*, 12-CV-508, 2012 WL 1744536, at *4 (D. Md. May 14, 2012) (*quoting Harrison*, 176 F.3d at 784 (internal quotations omitted); Rule 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.")).

As to the fourth and fifth elements, Fidelity alleges that the representations in the Executive Summary and Implementation Plan about Stoddard's participation in Qintera "were a critical factor" in Fidelity's decision to loan the $500,000. ECF No. 48-1 ¶ 44. Fidelity also alleges that it relied on the financial information presented to it by the defendants in the Executive Summary, and as a result, "has been damaged in the amount of the $500,000 loan." *Id.* ¶ 48. Thus, Fidelity has alleged reliance on the misrepresentations and "compensable injury" from them. *Hoffman,* 867 A.2d at 292.

As the amended complaint states a claim for piercing the corporate veil by fraud,[38] the amendment is not futile.

---

[38] Fidelity asserts that "after discovery" it "anticipates" proving "that corporate formalities were disregarded" and that Roosevans is personally liable for Qintera's debts. ECF No. 47 at 11-12. However, the amended complaint only asserts a claim for veil piercing based on fraud, *see* ECF No. 48-1 at 13, rather than "paramount equity," which takes into account factors

28

Fidelity's motion for leave to amend Count Two will be granted. Roosevans's motion to dismiss will be denied as moot.

### 3. Piercing the Corporate Veil Claim Against FRA

The amended complaint seeks to hold FRA liable for the Loan, because FRA is allegedly the corporate "alter ego" of Qintera. ECF No. 48-1 at 18-19. Qintera and Roosevans oppose the amendment on grounds that Fidelity has failed to allege sufficient facts to state a claim to pierce the corporate veil because of fraud or "paramount equity."[39] *See* ECF No. 53 at 5-6.

### a. Fraud

To the extent that Fidelity seeks to assert a cause of action for piercing FRA's corporate veil on the basis of fraud, it has failed to allege with particularity FRA's participation in the fraud. *See, e.g., Andrews v. Fitzgerald*, 823 F. Supp. 356, 373 (M.D.N.C. 1993) ("[W]here multiple defendants are asked

---

indicating a "disregard of the corporate fiction." *See Residential Warranty*, 126 Md. App. at 307, 728 A.2d at 789. If Fidelity wants to assert a claim for veil piercing against Stoddard and Roosevans on a basis other than fraud, it must seek to amend its complaint accordingly.

[39] Qintera and Roosevans also argue that Fidelity has not shown entitlement to pierce the corporate veil, because veil-piercing is not an independent cause of action but instead "a means of imposing liability on an underlying cause of action." ECF No. 53 at 4 (*quoting In re Transcolor Corp.*, 296 B.R. 343, 355 (Bankr. D. Md. 2003) (internal quotations omitted)). However, Fidelity seeks to pierce the corporate veil to impose liability on FRA for Qintera's breach of contract, *see* ECF No. 48-1 ¶¶ 78-79, which tethers its claim against FRA to a cause of action.

to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.") (*quoting DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (internal quotations omitted)). Fidelity does not identify any misrepresentation made by FRA or on behalf of FRA. Thus, Fidelity has failed to state a claim against FRA to pierce the corporate veil on the basis of fraud. *See, e.g., Stanley v. Cent. Garden & Pet Corp.*, 891 F. Supp. 2d 757, 767 (D. Md. 2012) (denying motion to dismiss, because to pierce the veil of a parent corporation, plaintiff "must show that the *corporate cloak* has been used to perpetuate fraud, not simply that a related corporation perpetrated any type of fraud") (emphasis in original); *Harte-Hanks*, 299 F. Supp. 2d at 515.

b. Paramount Equity

"Despite the proclamation that a court may pierce the corporate veil to enforce a paramount equity, arguments that have urged a piercing of the veil 'for reasons other than fraud' have failed in Maryland courts." *Residential Warranty*, 126 Md. App. at 306-11, 728 A.2d at 789-91 (*citing Travel Comm.*, 91 Md.App. at 156); *see also Dixon v. Process Corp.*, 38 Md. App. 644, 645-46, 382 A.2d 893, 895 (1978) ("[W]oe unto the creditor who seeks to rip away the corporate facade in order to recover from one sibling of the corporate family what is due from

another in the belief that the relationship is inseparable, if not insufferable, for his is a herculean task."); *Harte-Hanks*, 299 F. Supp. 2d at 514 ("Maryland generally is more restrictive than other jurisdictions in allowing a plaintiff to pierce the corporate veil.").

However, the Court of Appeals of Maryland has noted that other courts have applied the following factors when evaluating veil-piercing claims in the absence of fraud:

> (1) whether the corporation is inadequately capitalized, fails to observe corporate formalities, fails to issue stock or pay dividends, or operates without a profit, (2) whether there is commingling of corporate and personal assets, (3) whether there are non-functioning officers or directors, (4) whether the corporation is insolvent at the time of the transaction, and (5) the absence of corporate records.

*Hildreth*, 378 Md. at 733-35, 838 A.2d at 1209-10 (reversing the lower court's decision to pierce the corporate veil on grounds of "paramount equity").

Fidelity alleges that "Qintera had no mind of its own," because it had the same office as FRA "and [] relied [on] the employees, policies and resources" of FRA, including start-up funding of $250,000. ECF No. 48-1 ¶¶ 75, 77. Qintera had "substantial commonality" in "employees and officers" as FRA. *Id.* ¶ 76. During the repayment negotiations, Roosevans requested that FRA be listed as the corporate borrower on a promissory note rather than Qintera. *Id.* ¶ 78. Finally,

Qintera was allegedly undercapitalized, because its assets were used for Roosevans's and Stoddard's personal benefit and for other companies. *Id.* ¶ 69.

These allegations are insufficient to state a claim to pierce the corporate veil under Maryland law, which appears to have never pierced the corporate veil on grounds of paramount equity. *See Ademiluyi*, 929 F. Supp. 2d at 517 (dismissing claim, because allegations of day to day control of subsidiary's operations "through the direction of [the parent's] Board of Trustees and management staff" were insufficient under Maryland law to pierce the corporate veil); *e.g.*, *Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 275 Md. 295, 296, 304-05, 312 340 A.2d 225, 228, 231-32, 235 (1975) (declining to pierce the corporate veil in absence of fraud, when company's assets were depleted to evade its legal obligations and used by other companies and company's principals until company was almost insolvent); *Antigua*, 307 Md. at 736-37, 517 A.2d at 93 (declining to pierce the corporate veil when "the subsidiary corporation was the service company of the parent [company and] operated out of the offices of the parent using persons on the payroll of the parent").

As Fidelity's claim against FRA based on piercing the corporate veil would not survive a motion to dismiss, the

amendment is futile.[40]  *See Perkins,* 55 F.3d at 917.  Fidelity's
motion for leave to amend to add Count Four will be denied.[41]

III. Conclusion

For the reasons stated above, Roosevans's motion to dismiss
will be denied as moot, and Fidelity's motion for leave to amend
the complaint will be granted in part and denied in part.


_____                    _____
Date                                       William D. Quarles, Jr.
                                           United States District Judge


---

[40] Fidelity argues that the Court should not closely scrutinize
the substantive merits of its claim in deciding whether to grant
leave to amend.  *See* ECF No. 58 at 3-4.  However, leave to amend
may be denied when, as here, the amended complaint "advance[es]
a claim . . . that is legally insufficient on its face."  *See*
Wright & Miller, *Amendments With Leave of Court—When Leave to
Amend May Be Denied*, 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed.).

[41] Fidelity requests discovery to remedy any deficiencies in its
claim against FRA.  *See* ECF No. 58 at 6.  However, Fidelity must
state a plausible claim for relief before it is entitled to
discovery.  *See Iqbal*, 556 U.S. at 678-79.

33