IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| FIDELITY & GUARANTY LIFE INSURANCE CO., | * |
| Plaintiff, | * |
| v. | *  CIVIL NO.: WDQ-13-0040 |
| UNITED ADVISORY GROUP, INC. d/b/a QINTERA FINANCIAL GROUP, et al., | * |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Fidelity & Guaranty Life Insurance Co. ("Fidelity") sued United Advisory Group, Inc. d/b/a Qintera Financial Group ("Qintera"), Joseph Roosevans, and James Stoddard, (collectively, the "defendants") for breach of contract, unjust enrichment, and fraud. ECF No. 63. Pending is Qintera's motion for leave to file a counterclaim with its answer to Fidelity's first amended complaint. ECF No. 78. No hearing is necessary. Local Rule 105.6 (D. Md. 2014). For the following reasons, Qintera's motion will be granted in part and denied in part.

I.   Background[1]

    This case arises from an alleged contractual relationship between Fidelity and the defendants, under which Qintera was authorized to sell Fidelity's insurance products.  *See* ECF Nos. 63 ¶ 1, 63-4 at 2, 63-7 at 10.  On or about June 21 and 22, 2012, Fidelity representatives met with Stoddard and Roosevans,[2] "part of the group from Defendant Qintera," in Baltimore, Maryland, to negotiate the terms of a development loan agreement (the "Loan").  ECF No. 63 ¶¶ 16, 21.  During these negotiations, at which Stoddard and Roosevans allegedly "represent[ed] themselves as well as Defendant Qintera," Stoddard and Roosevans "prepared and presented" to Fidelity a "'Business Plan Executive Summary' and an 'Implementation Plan' for Defendant Qintera." *Id.* ¶¶ 24, 29.  The Executive Summary stated that Qintera would leverage its affiliation with Financial Resources of America, Inc. ("FRA") so that it would not "start[] from scratch" in selling Fidelity's products.[3]  *See id.* ¶ 30 (internal quotation

---

[1] The facts are from the amended complaint and its attachments, ECF No. 63, and Qintera's counterclaim motion and its attachments, ECF No. 78.

[2] Stoddard was Qintera's President; Roosevans is Qintera's chief executive officer.  *See* ECF Nos. 63 ¶¶ 15, 20, 63-2 at 4. Qintera is allegedly an affiliate of Financial Resources of America, of which Roosevans is also President or chief executive officer.  ECF No. 63 ¶¶ 20, 30.

[3] FRA, Qintera, and United Advisory Group have their principal places of business at the same Illinois address, the same chief

marks omitted).  The Executive Summary also stated that FRA would fund $250,000 of Qintera's start-up expenses.[4]  *Id.* ¶ 45.

The Executive Summary described Stoddard's qualifications as President of Qintera, and the Implementation Plan assigned "numerous tasks" for Stoddard to complete for Qintera.  *Id.* ¶¶ 40-41.  Stoddard's participation in Qintera was a "critical factor" in Fidelity's decision to enter the Loan agreement.  *Id.* ¶ 44.

The Loan was "made" as of August 1, 2012.  ECF No. 63-2 at 2.  Under the agreement, Fidelity agreed to lend Qintera $500,000, and the defendants, "jointly and severally,"[5] agreed to repay that amount with interest on or before the "maturity date."  ECF Nos. 63 ¶ 2, 63-2 at 2.  Paragraph 1(a) of the Loan Agreement defined "Maturity Date" as "12/31/2014, or such earlier date as the Note may become due by acceleration or demand."  ECF No. 63-2 at 2.

---

executive officer and founder (Roosevans), and other common executives and officers.  *See* ECF No. 63 ¶¶ 31-36.

[4] This statement was allegedly false, and "all of the Defendants knew or should have known that Defendant Qintera was undercapitalized at the outset."  ECF No. 63 ¶ 46.

[5] The Loan document states that the agreement is made "jointly and severally . . . by and among" Fidelity and Qintera, "principals are Joseph Roosevans and Jim Stoddard."  ECF No. 63-2 at 2.  Roosevans and Stoddard only signed the Loan once, with their corporate titles, under the heading "Borrower: Qintera Financial Group."  *Id.* at 4.

Also on August 1, 2012, Stoddard signed a producer/agency form (the "Producer Form") for Qintera, which acknowledged that he had "received, read and agree[d] to be bound by the terms of [Fidelity's] Producer Agency/Agreement." ECF Nos. 63 ¶¶ 17-18, 63-6 at 2. By its terms, the producer/agency agreement (the "Producer Agreement") was "made and entered into" in the State of Maryland, and was to be governed by Maryland law.[6] ECF No. 63-4 at 8.[7]

On August 23, 2012, Fidelity wired $500,000 to Qintera's account at Midland State Bank in Effingham, Illinois. ECF No. 48-1 ¶ 3. On October 9, 2012, Qintera fired Stoddard because of poor performance, "took steps to remove him as a corporate officer," and asked Mr. Harry Stout, one of Qintera's directors, to replace him. ECF No. 78 ¶ 21. Stoddard contacted John Phelps, Fidelity Senior Vice President, to inform him of Stoddard's termination. *Id.* ¶ 22; *see also* ECF No. 83-1 at 1.

---

[6] Paragraph 29 of the Producer Agreement contained this forum selection clause:

> The parties hereto mutually agree that all suits . . . brought with respect to this Agreement . . . *or with respect to any aspect of our relationship* shall be brought only in the courts of the State of Maryland located in the City of Baltimore and of the United States District Court for the District of Maryland— Northern Division . . . and not in any other court(s).

ECF No. 63-4 at 8.

[7] Paragraph 26 of the Producer Agreement gave each party the right to terminate the agreement on 30 days' notice. *Id.* at 7.

According to Qintera, Fidelity did not want Stout--a former Fidelity CEO--involved, and used Stoddard's departure to "pull the plug on the venture . . .," and indeed do everything possible to ensure Qintera couldn't succeed." ECF No. 78 ¶¶ 23, 24.[8]

Between October 11 and December 14, 2012, Qintera made "certain interest payments" on the loan. *Id.* ¶ 4. However, "[t]he entire principal balance remains outstanding." *Id.*

On October 24, 2012, Fidelity terminated its relationship with Qintera by letter and demanded payment of the loan. ECF Nos. 63 ¶¶ 7, 27, 63-3 at 2, 78 ¶ 25.

On or around October 30, 2012, Fidelity ended its producer agreement with Qintera and its agents. ECF Nos. 63-5 at 2; 78 ¶ 26. Qintera alleges that Fidelity "coerc[ed] its partners in Qintera to pull the plug on negotiations and putative contracts with third parties." ECF No. 78 ¶ 27. Fidelity also ended its "producer agreement with all other business entities associated

---

[8] In May 2012, Qintera and Hubert Humphries Insurance Co. ("HH") entered into discussions about forming a lucrative producer relationship. ECF No. 78 at 12 n. 29. After Stoddard was fired, in October 2012, Phelps instructed Qintera--via Roosevans--to cancel negotiations because Fidelity "would not agree to any deal with HH." *Id.* at ¶ 53. Qintera alleges that Phelps "pull[ed] the plug on the new venture, and wanted to ensure that Qintera failed because of personal animus between himself and [Stout]." *Id.* ¶ 54. Phelps's statements "were made knowingly and with the intended malice of interfering with Qintera's prospective business," and "with the specific intent of interfering with Qintera's ability to enter into a contract with HH, and broader goal of ensuring Qintera's demise." *Id.* ¶¶ 55-56.

with Qintera, ending [Qintera's] extremely lucrative and decades-long relationship with Financial Resources Planning, Inc. ("FRP")." *Id.* ¶ 28.

On January 3, 2013, Qintera sued Fidelity in Illinois state court for fraudulent inducement. ECF Nos. 83 at 5; 83-2.[9]

On January 4, 2013, Fidelity filed suit in this Court on the basis of diversity jurisdiction.[10] Count One alleged breach of contract against the defendants; Count Two alleged breach of contract against Stoddard and Roosevans individually. *See* ECF No. 1 at 6-7. Count Two alleged that Stoddard and Roosevans entered into the Loan agreement with "fraudulent intent" by materially misrepresenting Qintera's financial status, as well as their intentions "with respect to the use of the loan proceeds." *Id.* ¶¶ 35-36. Fidelity alleged entitlement to pierce the corporate veil and obtain relief from Stoddard and Roosevans because of their fraud and role as Qintera's "alter egos." *Id.* ¶ 40. Count Three alleged unjust enrichment against the defendants. *Id.* at 9. The amended complaint adds Count

---

[9] Qintera alleged that Fidelity made false statements of material fact that induced Qintera into signing the Loan. ECF No. 83-2.

[10] Fidelity is a Maryland corporation with its principal place of business in Maryland. ECF No. 63 ¶ 13. Qintera is an assumed business name for United Advisory Group, Inc., which is a Delaware corporation with its principal place of business in Illinois. *Id.* ¶ 14. Stoddard is a resident of Florida. *Id.* ¶ 15. Roosevans is a resident of Illinois. *Id.* ¶ 20. FRA is an Illinois corporation with its principal place of business in Illinois. *Id.* ¶ 22.

Four against FRA, alleging that Fidelity "is entitled to collect the debt owed by Defendant Qintera from Defendant FRA as its alter ego," because "Qintera had no mind of its own."[11] *See* ECF No. 63 ¶¶ 75, 79.

On January 25, 2013, following a hearing, the Court denied Fidelity's request to preliminarily enjoin the defendants from proceeding against it in litigation in Illinois. ECF Nos. 16, 17.[12] On January 29, 2013, Fidelity removed the action to the United States District Court for the Southern District of Illinois. ECF No. 83 at 5 n. 25. On March 14, 2013, Qintera voluntarily dismissed the suit. *Id.*

On January 29, 2014, the Court granted in part, and denied in part, Fidelity's motion to amend the complaint, and denied as moot Roosevan's motion to dismiss for failure to state a claim. ECF No. 62.

On March 30, 2014, Qintera moved for leave to file a counterclaim with its answer to the amended complaint. ECF No. 78. Count One of Qintera's proposed counterclaim alleges breach of contract; Count Two alleges breach of the implied covenant of

---

[11] The amended complaint seeks damages of $500,000 against the defendants and FRA, jointly and severally, plus interest accrued to the date of judgment, and attorney's fees and costs. ECF No. 63 at 15.

[12] On February 13, 2013, Qintera answered the complaint. ECF No. 23. On February 25, 2013, Stoddard answered the complaint. ECF No. 27.

good faith and fair dealing; and Count Three alleges tortious

interference with contract and prospective advantage.  *Id*. at

13-17.  On May 1, 2014, Fidelity opposed the motion.  ECF No.

83.  On May 16, 2014, Qintera replied.  ECF No. 84.[13]

## II.  Analysis

Qintera seeks leave to file its counterclaim under Federal

Rule of Civil Procedure 13(a)(2)(A), or, alternatively, under

Rule 15(a)(2).  ECF No. 78 at 1 & n.2.  Fidelity contends that

Qintera's motion should be denied under both rules.  ECF No. 83

at 1.

### A.  Rule 13(a)(2)(A)

#### 1.  Legal Standard

As a general rule,

> [a] pleading must state as a counterclaim any claim
> that--at the time of its service--the pleader has
> against an opposing party if the claim (A) arises out
> of the transaction or occurrence that is the subject
> matter of the opposing party's claim; and (B) does not
> require adding another party over whom the court
> cannot acquire jurisdiction.

Fed. R. Civ. P. 13(a)(1)(A)-(B).  However, "[t]he pleader need

not state the claim if . . . when the action was commenced, the

---

[13] On March 31, 2014, the Court entered a scheduling order,
setting August 13, 2014, as the discovery deadline.  ECF No. 79.
On July 9, 2014, the Court granted the parties' consent motion
to modify the scheduling order, and extended the deadline (1)
for Rule 26(a)(2) disclosures until 15 days after the Court
resolves the instant motion, and (2) for full discovery and
submission of a status report until 61 days after the Court's
order resolving the instant motion.  ECF Nos. 90, 91.

claim was the subject of another pending action." Fed. R. Civ. P. 13(a)(2)(A).

### 2.   Qintera's Motion

Qintera contends that Rule 13(a)(2)(A) applies because "when the instant matter was commenced, a separate matter encompassing claims built on the same or substantially similar nucleus of facts" was pending in Illinois state court. ECF No. 78 at 1 n. 2. Fidelity contends that Rule 13(a)(2)(A) did not excuse Qintera from filing its counterclaim with its original answer because the claims asserted in the Illinois suit differ from the claims asserted in the counterclaim. ECF No. 83 at 15.

Fidelity is correct. Rule 13(a)(2)(A) excuses Qintera from stating an otherwise compulsory counterclaim under Rule 13(a)(1) when *that claim* is the subject of a pending action. *See Innovative Therapies, Inc. v. Meents*, No. CIV.A. DKC 12-3309, 2013 WL 2919983, at *5 n.4 (D. Md. June 12, 2013)(counterclaim within Rule 13(a)(2)(A) exception when "substantively identical" claims asserted in a derivative state action). However, Qintera's Illinois suit alleged fraudulent inducement, which is substantively different from breach of contract, breach of implied covenant of good faith and fair dealing, and tortious interference--its alleged counterclaims. ECF Nos. 78 at 13-15; 83-2. Accordingly, Qintera's counterclaim in this suit is not permitted under Rule 13(a)(2)(A).

B.    Rule 15(a)(2)

1.    Legal Standard

When Rule 13(a)(2)(A) is unavailaing, whether to grant leave to amend a pleading to add an omitted counterclaim is governed by Rule 15.  *See Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 439 (4th Cir. 2011).[14]  Federal Rule of Civil Procedure 15(a)(2) instructs that leave to amend should be freely given when justice requires.  Leave should be denied only when amendment would unduly prejudice the opposing party, amount to futility, or reward the movant's bad faith.  *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008); *Equal Rights Ctr. v. Niles Bolton Associates*, 602 F.3d 597, 603 (4th Cir. 2010).

2.    Qintera's Motion

Fidelity asserts that Qintera's counterclaim is prejudicial, futile, and in bad faith.  ECF No. 83 at 6.

i.    Prejudice

Qintera contends that its counterclaim is not prejudicial because the "litigation is still in its relatively early stages," and discovery has not commenced.  ECF Nos. 78 at 4; 84

---

[14] In 2009, former Rule 13(f)--which governed the addition of omitted counterclaims--was deleted in favor of Rule 15.  *See* Fed. R. Civ. P. 13 advisory committee's note: 2009 Amendments; *see also Virginia Innovation Sciences, Inc. v. Samsung Electronics Co.*, 11 F. Supp. 3d 622, 629 (E.D. Va. 2014)("The 2009 Amendments to the Federal Rules of Civil Procedure made changes to Rule 15(a) and abrogated Rule 13(f).").

at 2.  Fidelity contends that Qintera's counterclaim is

dilatory, and prejudicial, because Qintera asserts claims

"resulting from termination of business relationships with 'all

other business entities associated with Qintera,'" and

Fidelity's motion to amend its complaint to add another

defendant was denied.  ECF No. 83 at 8.[15]

   In determining whether an amendment is prejudicial, the

Court generally considers its nature and timing.  *Laber v.*

*Harvey*, 438 F.3d 404, 427 (4th Cir. 2006).  For example, an

amendment is often prejudicial if it "raises a new legal theory

that would require the gathering and analysis of facts not

already considered by the opposing party, [and] is offered

shortly before or during trial."  *Johnson v. Orowheat Foods*, 785

F.2d 503, 510 (4th Cir. 1986).  However, amendments that "merely

add[] an additional theory of recovery to the facts already pled

---

[15] Fidelity contends that "[u]nless Qintera is an alter ego of
one or more other companies, it would not have standing to
assert that losses of other companies are attributable to its
own losses."  ECF No. 83 at 8 n. 39.  Qintera's reply clarifies
that it is not seeking damages or other relief for other
entities.  ECF No 84.  Rather, it mentioned Fidelity's
termination of its agreement with FRP in its counterclaim as
background.  ECF Nos. 78 ¶ 28; 84 at 5.  In a footnote, Qintera
refers to Fidelity's letter terminating its producer agreement
with *FRA*, not *FRP*, attached as an exhibit.  ECF No. 78 at 13 n.
30.  Although Fidelity contends--without explanation--that it is
"[s]ignificant[]" that Qintera refers to FRA and FRP
"interchangeably," ECF No. 83 at 9, Qintera's footnote appears
to contain a typographical error, as the exhibit is a letter
from Fidelity to FRP, and comports with the background
information Qintera provided in the counterclaim.  *See* ECF Nos.
78 ¶ 28, 78-6.

and [are] offered before any discovery has occurred" are not prejudicial. *Laber*, 438 F.3d at 427. Similarly, when "defendant was from the outset made fully aware of the events giving rise to the action," no prejudice can occur from the amendment. *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980).

Here, Qintera's counterclaim asserts theories of recovery that arise out of the same contractual relationship at issue in Fidelity's complaint.[16]  Further, under the modified scheduling order, discovery disclosures need not commence until after the Court resolves the instant motion; final discovery is not due until 61 days after the Court enters its order. *Cf. Mayfield* 674 F.3d at 379 (denying leave to amend when significant discovery had been conducted). ECF No. 91.  The trial date has not been set; thus, Qintera's counterclaim was not brought "shortly before or during trial." *See Johnson*, 785 F.2d at 510. Accordingly, there is no prejudice for which leave to amend should be denied. *See Sherwin-Williams Co. v. Coach Works Auto Collision Repair Ctr., Inc.*, No. WMN-07-CV-2918, 2010 WL 889543, at *2 (D. Md. Mar. 4, 2010).

---

[16] For example, each party alleges that the other breached the Loan contract.  *Compare* ECF No. 63, Counts One and Two, *with* ECF No. 78, Count One.  All other Counts collectively alleged-- unjust enrichment, breach of the implied covenant of good faith and fair dealing, and tortious interference--relate to the parties' implementation of, and decision to terminate, the Loan. *See* ECF Nos. 63, Count Three; 78, Counts Two and Three.

ii.   Futility

Qintera asserts that its counterclaim is not futile because "all three claims are sufficiently pled, factually supported, and [not] clearly insufficient or frivolous." ECF No. 84 at 7. Fidelity asserts that all three claims are futile. ECF No. 83 at 9-15.  An amendment is futile if it would not withstand a motion to dismiss. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).  However, "conjecture about the merits of the litigation" should not be entertained in a motion for leave to amend unless "a proposed amendment may clearly be seen to be futile," *Davis*, 615 F.2d at 613, such as when "the proposed amended complaint fails to state a claim," *Katyle v. Penn Nat'l Gaming Inc.*, 637 F.3d 462, 471 (4th Cir. 2011).[17]

a.   Breach of Contract

To survive a motion to dismiss, "a [claim] for breach of contract must allege facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation."  *See Swedish Civil Aviation Admin. v. Project Mgmt.*

---

[17] This Court has previously addressed choice-of-law considerations.  *See* ECF No. 61 at 10.  Because "the location of the contract's formation [was] unclear," the Court concluded that Maryland law applied to the pending motions and "defer[red] final determination of the choice-of-law issues" until after discovery.  *Id.* at 13-14.  The Court stated that "[i]f the parties fail to brief choice-of-law in later stages of these proceedings, the Court will apply Maryland law to resolve the parties' claims under *Chambco, Div. of Chamberlin Waterproofing & Roofing, Inc. v. Urban Masonry Corp.*, 338 Md. 417, 421, 659 A.2d 297, 299 (1995)."  *Id.* at 14 n. 20.

*Enter., Inc.*, 190 F.Supp.2d 785, 791 (D. Md. 2002) (*citing Cont'l Masonry Co., Inc. v. Verdel Constr. Co., Inc.*, 279 Md. 476, 480 (Md.1977)).

Here, Qintera alleges that the terms of the Loan gave Qintera "*at least* until December 31, 2014 to meet or exceed . . . projected production levels." ECF No. 78 ¶ 33.  Further, the Loan permitted Fidelity to invoke the acceleration clause, and demand full repayment, under three instances, none of which was present.  *Id.* ¶ 34.[18]  By "accelerating the maturity date of the loan and demanding immediate payment" absent those instances, Qintera alleges that Fidelity breached the Loan.  *Id.* ¶ 35. Fidelity argues that--under paragraph 1(a) of the Loan--it "had the absolute right" to demand repayment.  ECF No. 83 at 9.[19] Paragraph 1(a) provides that the "Maturity Date is 12/31/2014,

---

[18] They include (1) achieving production levels early (in which case the principal would be forgiven); (2) failure to make interest payments; and (3) Fidelity's termination of "Qintera as a producer under the terms of their separate Producer Agreement."  ECF No. 78 ¶ 34.

[19] Fidelity further contends that it had the right to demand repayment under paragraph 1(f), which provides for repayment when Fidelity terminates the Producer Agreement.  *See* ECF Nos. 63-2 at 3; 63 ¶ 7; 83 at 4.  However, Fidelity demanded repayment on October 24, 2012, before it canceled the Producer Agreement on October 30, 2012.  ECF Nos. 63 ¶ 6; 63-5 at 2.

Fidelity also contends that Qintera cannot prove that its request for repayment caused Qintera to suffer damages.  ECF No. 83 at 10.

or such earlier date as the Note may become due by acceleration or demand." ECF No. 63-2 at 2.[20]

Maryland applies "the law of the objective interpretation of contracts" to determine whether a contract is ambiguous. *Calomiris v. Woods*, 727 A.2d 358, 363 (Md. 1999). "Under the objective view, a written contract is ambiguous if, when read by a reasonably prudent person, it is susceptible of more than one meaning." *Id.*

Here, the Loan is ambiguous. Paragraphs 1(e) and (f) provide Fidelity the "automatic right to accelerate or demand full payment of the [L]oan" if certain conditions are met. ECF No. 63-2 at 3. If Fidelity had the right to demand full payment at any time under paragraph 1(a), paragraphs 1(e) and (f) would be superfluous. Under "basic principles of contract interpretation," contract terms should "be construed so that none are rendered superfluous." *Holland v. Psychological Assessment Res., Inc.*, 482 F. Supp. 2d 667, 676 (D. Md. 2007)(citing *State Highway Admin. v. David A. Bramble, Inc.*, 717

---

[20] Qintera contends that Fidelity's argument is unavailing because, in a prior opinion resolving Qintera's motion to dismiss the complaint, this Court determined that the contract was ambiguous. ECF No. 84 at 7. However, there, the Court determined that the Loan was ambiguous because it was not clear which parties were responsible for its repayment. *See* ECF No. 62 at 18-21. The Court did not address whether the Loan was ambiguous about when Fidelity could demand repayment.

A.2d 943, 948 (Md. 1998).[21]  Although it is not clear, that the

Loan "may become due by acceleration or demand" under paragraph

1(a) appears to be restricted by the conditions enumerated in

subsequent paragraphs; however, that restriction is not

explicit.  Accordingly, Qintera's counterclaim for breach of

contract would survive a motion to dismiss; thus, it is not

futile.

> b.  Breach of Covenant of Good Faith and
> Fair Dealing

Fidelity contends that Maryland law does not support an

independent claim for breach of the implied covenant of good

faith and fair dealing.  ECF No. 83 at 10.  Qintera argues that

"causes of action based upon breaches of implied covenants are

routinely allowed where they stem from and are linked to

allegations of specific contractual breaches."  ECF No. 84 at

10.  Qintera cites *RRC Ne., LLC v. BAA Maryland, Inc.*, 994 A.2d

430, 450 (Md. 2010), as supporting the proposition that "implied

covenants . . . remained an enforceable aspect of Maryland law,

and could be [pled] in conjunction with claims for breach of

contract."  *Id.* at 84 n. 30.  However, the plaintiff in *RRC Ne.*

---

[21] *See also Rota-McLarty v. Santander Consumer USA Inc.*, 700 F.3d
690, 701 (4th Cir. 2012)("Basic principles of contract
interpretation instruct us to look first to the plain meaning of
the contract's terms, and also to give meaning to each word used
and avoid constructions that render language meaningless,
superfluous, or contradictory.")(*citing DIRECTV, Inc. v.
Mattingly*, 829 A.2d 626, 637 (Md. 2003)).

alleged implied breach of contract in the same count alleging

breach of an express contract. *See RRC Ne.*, 994 A.2d at 444

("Count I, entitled 'Breach of Contract and Implied Breach of

Contract,' . . . alleges the following: . . . Defendant BAA has

an express obligation under Article 12.17 of the 2005 sublease

agreement as well as an implied covenant of good faith and fair

dealing under the sublease agreement and temporary sublease . .

. .").[22]  *RRC Ne.* thus comports with Maryland law, wherein the

implied duty of good faith is part of a breach of contract claim

rather than a separate claim. *See Mt. Vernon Props., LLC v.*

*Branch Banking & Trust Co.*, 170 Md. App. 457, 472 (Md. Ct. Spec.

---

[22] Qintera also relies upon *Eastern Shore Markets, Inc. v. J.D.*
*Assoc. Ltd. Partnership*, 213 F.3d 175 (4th Cir. 2000).  ECF No.
84 at 10 n. 30.  *Eastern Shore* addressed whether Maryland law
recognized an implied duty to refrain from destructive
competition as part of the implied covenant of good faith and
fair dealing.  *Eastern Shore*, 213 F.3d at 182-83, 185.   The
Fourth Circuit concluded that "Maryland courts would [not]
categorically refuse to recognize an implied covenant to refrain
from destructive competition in the lease between Eastern Shore
and J.D. Associates."  *Id.* at 185.  *Eastern Shore* did not
address whether any breach of an implied duty must be pled with
breach of express covenants of the lease.  Further, the Fourth
Circuit recognized that, under well-established Maryland law,
"the covenant of good faith and fair dealing 'does not obligate
a [party] to take affirmative actions that the [party] is
clearly not required to take under [the contract].'"  *Id.* at
182-83 (*quoting Parker v. Columbia Bank*, 604 A.2d 521, 531 (Md.
Ct. Spec. App. 1992))(alterations in original).  In *Parker*, the
plaintiff "allege[d] a violation of the express terms of the
contract and of an implied duty of good faith" as part of the
same breach of contract claim.  604 A.2d at 530.  Thus, the
Court will not--as Qintera urges--rely on *Eastern Shore* to hold
that Maryland law permits a separate cause of action for breach
of implied covenants.

App. 2006).[23]   Accordingly, Qintera's claim for breach of implied covenant of good faith and fair dealing is futile, and Fidelity's motion will be granted on that claim.

### c.   Tortious Interference

In Maryland, a plaintiff claiming tortious interference with prospective advantage must allege facts showing that the defendant committed "(1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 313-14 (Md. Ct. Spec. App. 1995) (*quoting Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260 (Md. 1994)).[24]   For a plaintiff to recover, "the

---

[23] *See also Blondell v. Littlepage*, 991 A.2d 80, 90-91 (Md. 2010)(explaining that the "implied duty of good faith and fair dealing . . . concerns the performance and enforcement of the contract itself" and does not "interpose new obligations about which the contract is silent")(citations and internal quotation marks omitted); *Baker v. Sun Co., Inc. (R & M)*, 985 F. Supp. 609, 610-11 (D. Md. 1997)("Maryland does not recognize an independent cause of action for breach of the implied contractual duty of good faith and fair dealing"); *Stephens v. Liberty Mut. Fire Ins. Co.*, 821 F. Supp. 1119, 1122 (D. Md. 1993)(stating same).

[24] In sum, the plaintiff must show "tortious intent and improper or wrongful conduct." *Macklin v. Robert Logan Assoc.*, 639 A.2d 112, 119 (Md. 1994).

defendant's conduct must be independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *Lyon v. Campbell*, 707 A.2d 850, 860 (Md. Ct. Spec. App. 1998)(internal quotation marks and citation omitted).

Fidelity contends that Phelps's statements were not malicious or wrongful because Fidelity had the right to terminate the Producer Agreement on 30 days' notice. ECF No. 83 at 3-4, 14-15.[25] Conduct considered wrongful includes "violence or intimidation, defamation, injurious falsehood or other fraud, violation of the criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *PPM Am., Inc. v. Marriott Corp.*, 853 F. Supp. 860, 880 (D. Md. 1994)(*quoting K & K Mgmt., Inc. v. Lee*, 557 A.2d 965 (Md. 1989)). Plaintiffs generally "must plead these egregious acts because '[a] broader right to interfere with economic relations exists where no contract or a contract terminable at will is involved.'" *Ultrasound Imaging Corp. v. Am. Soc'y of Breast Surgeons*, 358 F. Supp. 2d 475, 481 (D. Md. 2005)(*quoting Macklin*, 639 A.2d at 117). However, wrongful conduct may be "quite subtle." *Macklin*, 639 A.2d at 119.

---

[25] Fidelity has submitted an affidavit that Phelps did not have animus toward Stout, and did not instruct Roosevans to end negotiations with HH. ECF No. 83-1. However, factual disputes are not properly resolved when considering whether an amendment is futile; the test is whether the claim would survive a motion to dismiss. *See Perkins*, 55 F.3d at 917.

Here, Qintera has alleged facts showing that Phelps's conduct was wrongful. Phelps instructed Roosevans to end negotiations with HH because of Phelps's "personal animus" toward Stout, and because he had decided to end Qintera's Producer Agreement. ECF No. 78 ¶¶ 53-54. Although "conduct is not improper or wrongful if he or she had the right to" do it, *Macklin*, 639 A.2d at 119, Phelps told Roosevans to cancel negotiations with HH, and advised him that Fidelity would not agree to the deal, about two weeks before Fidelity demanded repayment, and about three weeks before it terminated Qintera's Producer Agreement. ECF No. 78 ¶¶ 25, 26, 53. Although the evidence may ultimately show that Phelps had the right--on October 10, 2012--to instruct Roosevans to cease negotiations, at this stage, Qintera has plausibly alleged wrongful conduct

Qintera has sufficiently alleged malice. Phelps intended to interfere with the potential contract with HH with the "broader goal of ensuring Qintera's demise." *Id.* ¶ 56. Accordingly, Qintera's tortious interference claim would survive a motion to dismiss; thus, it is not futile.

### iii.   Bad Faith

Fidelity contends that Qintera's counterclaim motion is in bad faith because Qintera "waited over a year to assert a counterclaim," which asserted facts known to Qintera before this suit commenced. ECF No. 84 at 8. Fidelity further contends

that Qintera--after "passionately argu[ing]" that FRA should not be joined as a defendant--now asserts losses suffered by entities such as FRA.  *Id.* at 9.[26]  Qintera contends that Fidelity's assertions of bad faith are unsupported.  ECF No. 84 at 6.

Here, as discussed above,[27] Qintera is not asserting claims for losses to other entities.  It alleges that Fidelity breached the contract, and the covenant of good faith and fair dealing, between Qintera and Fidelity.  ECF No. 78, Counts One and Two. It further alleges that Fidelity tortiously interfered with a prospective contract between Qintera and HH; as a result, Qintera suffered damages.  *Id.*, Count Three.  Because "[d]elay alone, without prejudice, does not support the denial of a motion for leave to amend,"[28] Fidelity has not shown that Qintera's counterclaim was filed in bad faith.

Accordingly, Qintera's motion for leave to file a counterclaim with its answer will be granted on Counts One

---

[26] Fidelity restates the same argument it relied upon to show prejudice.

[27] *See supra* note 15 and accompanying text.

[28] *Deasy v. Hill*, 833 F.2d 38, 41 (4th Cir. 1987) (*citing Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1044 (4th Cir. 1984)).

(Breach of Contract), and Three (Tortious Interference).[29]

III. Conclusion

For the reasons stated above, Qintera's motion for leave to file a counterclaim with its answer to Fidelity's first amended complaint will be granted in part and denied in part.

_____
1/12/15
Date

_____
William D. Quarles, Jr.
United States District Judge

---

[29] The Court declines to use its discretion to deny Qintera's motion on grounds that it violated Local Rules. *See Francisco v. Verizon South, Inc.*, 272 F.R.D. 436, 440 (E.D. Va. 2011)("As a general rule, enforcement of local rules is within the sound discretion of the Court."). Fidelity asserts that Qintera violated Local Rule 103(6)(c) (D. Md. 2014), which requires a party filing an amended pleading to file a copy of that pleading reflecting changes from the original pleading. ECF No. 83 at 15-16. Although Federal Rule of Civil Procedure 15(a)(2)--which typically governs whether to permit an amended pleading--applies to the determination of whether to permit an omitted counterclaim, Qintera filed its counterclaim with its Answer to Fidelity's First Amended Complaint; it did not alter its Answer to Fidelity's original Complaint. Fidelity next asserts that Qintera violated Local Rule 103(6)(d) (D. Md. 2014), which requires counsel to "attempt to obtain the consent of other counsel" before "requesting leave to file and amended pleading." ECF No. 83 at 16. Although adherence to Local Rules is preferable, Fidelity has not shown prejudice from Qintera's failure to contact its counsel before filing its motion for leave to file its counterclaim. Fidelity was aware of Qintera's motion: one week after it was filed, Fidelity requested, and received, an extension of time for filing its response. ECF Nos. 80, 81. Finally, Fidelity asserts that Qintera violated Local 105(1), which requires motions to be "accompanied by a memorandum setting forth the reasoning and authorities in support of it." ECF No. 83 at 16. Although not separately titled as a "Memorandum," Qintera explained its legal reasoning in its motion. *See* ECF No. 78 at 1-5. Accordingly, the Court will not summarily deny Qintera's motion.