IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FIDELITY & GUARANTY LIFE  
INSURANCE CO.,

    Plaintiff,

v.                                                         Civil Case No. WDQ-13-0040

UNITED ADVISORY GROUP, INC.  
d/b/a QINTERA FINANCIAL GROUP,  
JAMES STODDARD, and JOSEPH  
ROOSEVANS,

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Plaintiff Fidelity & Guaranty Life Insurance Company ("Fidelity") filed suit against Defendants United Advisory Group, Inc., d/b/a Qintera Financial Group ("Qintera"), Joseph Roosevans ("Roosevans"), and James Stoddard ("Stoddard") (collectively, "Defendants"), for breach of contract, fraud, and unjust enrichment. See ECF No. 63. Presently pending is Fidelity's Motion for Leave to Further Amend its Complaint, ECF No. 101, Defendants Qintera and Roosevans' Joint Opposition thereto, ECF No. 113, Defendant Stoddard's Opposition thereto, ECF No. 114, and Fidelity's Reply, ECF No. 125. No hearing is necessary. See Loc. R. 105.6 (D. Md. 2014). For the reasons set forth herein, Fidelity's Motion for Leave to Amend is DENIED.

I.  BACKGROUND

This case arises from an alleged contractual relationship between Fidelity and the Defendants, under which Defendant Qintera was authorized to sell Fidelity's insurance products. *See* ECF Nos. 63-1 ¶¶ 1, 2. On or about August 1, 2012, the parties set out the terms of the relationship in their Development Loan Agreement ("the Loan"). *Id.* ¶ 2. Under the terms of the Loan, Fidelity agreed to lend Qintera five hundred thousand dollars, which Qintera, Defendant Stoddard, and Defendant Roosevans jointly and severally agreed to repay with interest by December 31, 2014, or at an earlier date upon acceleration or demand by Fidelity. *Id.* ¶ 2, 5. Fidelity alleges that Defendant Stoddard was the President of United Advisory Group at the time the Loan was executed, and that Defendant Roosevans is the Chief Executive Officer ("CEO") of Defendant United Advisory Group, doing business as Qintera, and also the CEO of Financial Resources of America ("FRA"). *Id.* ¶¶ 15, 20.

Before they executed the Loan, on or about June 21 and 22, 2012, representatives from Fidelity met with Defendants Stoddard and Roosevans, who Fidelity alleges were "representing themselves as well as Qintera," in Baltimore, Maryland to negotiate the terms of the Loan. *Id.* ¶ 27. During the negotiations, Defendants Qintera, Roosevans, and Stoddard

2

presented a 'Business Plan Executive Summary' and an 'Implementation Plan' for Defendant Qintera. *Id.* ¶ 28. The Business Plan Executive Summary referred to Defendant Qintera as an "affiliate" of FRA and stated that Qintera would be "leveraging" its affiliation with FRA in its operations, and would not be "starting from scratch." *Id.* ¶ 29. For example, the Implementation Plan stated that Qintera would use many of FRA's policies and resources in its day-to-day operations. *See id.* ¶ 36. The Executive Summary also stated that FRA would fund $250,000 of Qintera's start-up expenses. *Id.* ¶ 43.

The Executive Summary "contained detailed representations regarding projected revenue and expenses for 2012 through 2017." *Id.* Defendants were allegedly aware that these "financial projections were false as to the potential revenues and expenses of Defendant Qintera," or "had a reckless disregard" for their truth or falsity. *Id.* ¶¶ 44, 45. Fidelity relied on these representations in deciding to enter the Loan. *Id.* ¶ 46.

The Loan was "made" as of August 1, 2012. Under paragraph 1(f) of the Loan, "[t]ermination" of Qintera provided Fidelity an "automatic right to accelerate or demand full payment of the loan." *Id.* ¶ 5.; ECF No. 63-2 at 2. Moreover, Fidelity's failure to "exercise any rights" as to any uncured default or Qintera's termination was "not be considered a waiver of any of [Fidelity's] rights under this Agreement." ECF No. 63-1 ¶ 5;

ECF No. 63-2 at 2. Also on August 1, 2012, Stoddard signed a Producer/Agency form (the "Producer Form") on Qintera's behalf, which acknowledged that he had "received, read and agree[d] to be bound by the terms of [Fidelity's] Producer Agency/Agreement." ECF No. 63-1 ¶ 17; ECF No. 63-7 at 2. By its terms, the Producer/Agency Agreement (the "Producer Agreement") was "made and entered into" in the State of Maryland and was to be governed by Maryland law. ECF No. 63-5 at 8. On August 23, 2012, Fidelity wired $500,000.00 to Qintera's account at Midland State Bank in Effingham, Illinois. ECF No. 63-1 ¶ 3. Between October 11 and December 14, 2012, Qintera made "certain interest payments" on the loan. *Id.* ¶ 4. However, "[t]he entire principal balance remains outstanding." *Id.*

On October 24, 2012, Fidelity terminated its relationship with Qintera by letter and demanded payment of the loan. ECF Nos. 63-1¶ 6; ECF No. 63-2. Fidelity and Qintera entered into negotiations about a repayment schedule. ECF No. 63-1 ¶ 7. During the negotiations, Fidelity sent Roosevans and Stoddard a draft promissory note, listing Qintera and Roosevans "personally as borrowers." *Id.* Roosevans requested "that the corporate borrower" on the draft note "be changed from Defendant Qintera" to FRA. *Id.* However, the negotiations were unsuccessful. *See id.* ¶ 8.

On January 4, 2013, Fidelity filed suit in this Court on the basis of diversity jurisdiction. Fidelity filed an initial motion for leave to amend its Complaint on June 18, 2013, which the Court granted in part and denied in part. ECF Nos. 48, 63. Following the Court's January, 2014 ruling on Fidelity's motion to amend, the Complaint contains the following counts: Breach of Contract Against Defendants Qintera, Roosevans, and Stoddard (Count I); Breach of Contract Against Defendants Stoddard and Roosevans Individually by Piercing the Corporate Veil Due to Fraud (Count II); Unjust Enrichment Against Defendants Qintera, Stoddard, and Roosevans (Count III).

The parties conducted extensive discovery, and were afforded multiple discovery deadline extensions, until April, 2015. ECF Nos. 91, 100. On April 7, 2015, Fidelity filed the instant motion to amend its Complaint. ECF No. 101.

II. STANDARD OF REVIEW

Where a party seeks to amend its complaint after the deadline for amendments has passed, a tension exists between Federal Rule of Civil Procedure 15(a), which provides that leave to amend "shall be freely given when justice so requires" absent bad faith, futility, or prejudice, and Rule 16(b), which mandates against the modification of a scheduling order absent "a showing of good cause." See Fed. R. Civ. P. 15(a); Fed. R. Civ. P. 16(b); *Montgomery v. Anne Arundel County*, 182 F. App'x.

156, 162 (4th Cir. 2006); *Frapple, L.P. v. Comm'ners of Town of Rising Sun*, No. CIV-WDQ-10-0018, 2013 WL 3288507, at \*3 (D. Md. June 27, 2013). In *Nourisan Rug Corp. v. Parvizian*, the Fourth Circuit clarified that the Rule 16(b)(4) "good cause" standard governs when the deadline for amendment has passed under the Scheduling Order. 535 F.3d 295, 298 (4th Cir. 2008) ("[A]fter the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings. This result is consistent with rulings of other circuits."). Therefore, if the moving party does not first satisfy Rule 16(b)(4), the Court will not consider the Rule 15(a)(2) factors. *See Ibida v. Shoppers Food Warehouse*, No. CIV-SAG-12-1490, 2013 WL 2468650, at \*1 (D. Md. June 5, 2013).

The Rule 16(b) analysis is "less concerned with the substance of the proposed amendment," and focuses instead on the "timeliness of the amendment and the reasons for its tardy submission." *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D. Md. 2002). The moving party must show that the reasons for the belated filing of its motion "justify a departure from the rules set by the court in its scheduling order." *Id.* The "primary consideration" in a Rule 16(b) analysis is the diligence of the moving party. *Id.*; *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 631-32 (D. Md. 2003) (citing *Rassoull*, 209 F.R.D. at 374).

III.  DISCUSSION

Fidelity seeks leave to amend its Complaint to add piercing the corporate veil to enforce a paramount equity as a legal theory of recovery against all current Defendants. *See* ECF No. 101 at 1; *id*. Ex. 1 at 18. Additionally, in the "Facts" section of the proposed Second Amended Complaint, Fidelity seeks to add specific factual allegations regarding Defendants' undercapitalization, failure to respect corporate formalities, commingling of funds, and failure to maintain corporate records. ECF No. 101 at 1; *id*. Ex. 1. ¶¶ 46-58.

A brief explanation of the "paramount equity" doctrine, as defined under Maryland law,[1] is helpful here. While the Maryland

---

[1] In his Opposition to Fidelity's Motion to Amend, Defendant Stoddard argues that Delaware law, rather than Maryland law, should apply to this Court's assessment of the instant motion's proposed amended claim for piercing based on paramount equity. ECF No. 114 at 12-14. Defendant Stoddard cites this Court's finding in *Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 514-15 (D. Md. 2013) that "courts in this District have applied the law of the jurisdiction in which the corporation subject to piercing is incorporated" to support his argument. ECF No. 114 at 13. Notably, however, in *Ademiluyi*, while the corporation was incorporated in Delaware, the Court declined to apply Delaware law, and, instead, applied Maryland law, because the cases from this District on which the defendant in *Ademiluyi* relied to bolster his choice-of-law argument had themselves cited only to a Seventh Circuit case which relied on Illinois choice-of-law principles, rather than those of Maryland. *See Ademiluyi*, 929 F. Supp. 2d at 514. All of the cases cited by Defendant Stoddard cite only to these cases, as well, to hold that the law of the state of incorporation is the governing law.

Court of Appeals has declined to outline the precise circumstances that would warrant piercing the corporate veil to enforce a paramount equity, the court has explained that, "the courts may consider a corporation as unencumbered by the fiction of corporate entity . . . in order to prevent the evasion of legal obligations," and may also pierce a corporate veil where

---

The Court in *Ademiluyi* further noted that the parties in that case had "relied on Maryland law and ha[d] not identified any relevant legal principles that might differ in other jurisdictions." *Id.* Defendant Stoddard argues that the instant case differs from that in *Ademiluyi* because, after *Schlossberg v. Bell Builders Remodeling, Inc.*, 441 Md. 671, 109 A.3d 1146 (2015), the law of Maryland "significantly differ[s] from that of Delaware in at least one respect: Maryland law permits veil piercing so as to enforce a paramount equity even *without* alleging fraud while Delaware law does not." ECF No. 114 at 13 (emphasis in original) (internal quotation marks omitted) (citing *Bahr v. Sunrise Senior Living, Inc.*, No. 07-CV-3931, 2010 WL 432273, at *4 (N.D. Ill. Feb. 3, 2010) ("Delaware courts require an element of fraud or similar injustice to pierce the corporate veil under an alter ego theory.")). As such, Defendant Stoddard asserts that Delaware law should be applied.

This assertion is erroneous because *Schlossberg* did not cause Maryland piercing law to differ from Delaware piercing law in any significant respects relevant to the facts and allegations in the instant case. The Court of Appeals in *Schlossberg* held that, absent a count for common law fraud, courts proceeding under Maryland law may still disregard a corporate shield to enforce a paramount equity. Here, however, Fidelity alleges common law fraud *in addition to* its proposed amendment for piercing based on paramount equity. The count for fraud remains in the Complaint regardless of whether this Court grants the amendment. *Schlossberg* thus did not create any meaningful distinction between Maryland and Delaware piercing law that would be sufficient to reconsider this Court's prior ruling in its January, 2014 Memorandum Opinion that Maryland law should apply. Accordingly, Maryland law will apply to the piercing claims in this case.

"the stockholders themselves, or a parent corporation . . . fail to observe the corporate entity, operating the business or dealing with the corporation's property as if it were their own." See Hildreth v. Tidewater Equip. Co., 378 Md. 724, 734, 838 A.2d 1204, 1209 (2003) (quoting Brune, et al., *Maryland Corporation Law and Practice* § 371 (1953)).

The latter circumstance, often deemed the "alter ego doctrine," may be constituted where the corporation is "inadequately capitalized, fails to observe corporate formalities, fails to issue stock or pay dividends, or operates without a profit," is "insolvent at the time of the transaction," where there is "commingling of corporate and personal assets," and where corporate records are notably absent. Hildreth, 378 Md. At 735, 838 A.2d at 1210 (quoting 1 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 41.10 at 574-46 (1999)); see also *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 685 (4th Cir. 1976) ("When substantial ownership of all of the stock of a corporation in a single individual is combined with other factors clearly supporting disregard of the corporation fiction on grounds of fundamental equity and fairness, courts have experienced little difficulty and have shown no hesitancy in applying . . . the "alter ego" theory . . .").

Fidelity asserts three bases for its requested amendment to add a paramount equity/alter ego theory: first, that good cause exists to amend the Scheduling Order because the proposed amendment is based on facts obtained in discovery after the deadline for amending the pleadings under the Scheduling Order had passed; second, that the amendment is warranted under Rule 15's liberal policy to "freely give leave to amend when justice so requires," because neither bad faith nor prejudice is present; and, finally, that the amendment is not futile because *Schlossberg* permits corporate veil piercing based upon either proof of the need to enforce a paramount equity, or proof of fraud, rather than requiring proof of both. *See* ECF No. 101; ECF No. 125.

Fidelity argues that good cause exists to modify the Scheduling Order because discovery had not commenced at the time of the deadline for amending the pleadings set forth in the original Scheduling Order. On the May 15, 2014 deadline, Fidelity "had not yet obtained in discovery the facts upon which allegations in the Proposed Amended Second Complaint" are based. ECF No. 125 at 9.

Rule 16's "good cause" standard "primarily considers the diligence of the party seeking to amend, rather than simply that party's lack of bad faith or the lack of prejudice to the opposing party." *Essential Hous. Mgmt., Inc. v. Walker*, 166

F.3d 332 (4th Cir. 1998) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)); *see also Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D. Md. 1999) ("Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts.") (quoting *Dilmar Oil Company, Inc. v. Federated Mutual Insurance Company*, 986 F. Supp. 959, 980 (D.S.C.1997), *aff'd by unpublished opinion*, 129 F.3d 116, 1997 WL 702267 (4th Cir. 1997)). The Fourth Circuit has noted that a finding of good cause is warranted under Rule 16(b) where "at least some of the evidence needed for a plaintiff to prove his or her claim did not come to light until after the amendment deadline." *In re Lone Star Indus., Inc. Concrete R.R. Cross Ties Litig.*, 19 F.3d 1429, 1994 WL 118475, at *11 (4th Cir. Apr. 7, 1994).

This Court considers several factors in determining whether good cause exists to modify a Scheduling Order, including the "danger of prejudice to the non-moving party, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith." *Tawaab v. Virginia Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768-69 (D. Md. 2010) (quoting *Rothenberg v. Marriot Int'l, Inc.*, No. CCB-08-173, 2008 WL 687033, at *1 (D. Md. Feb. 29, 2008)) (citations omitted). "Rule 16(b) good cause exists when, *inter alia*, a party uncover[s] previously unknown facts during

11

discovery that would support an additional cause of action." *Prowess, Inc. v. Raysearch Labs, AB*, 953 F. Supp. 2d 638, 648 (D. Md. 2013) (citations and internal quotation marks omitted). However, courts may "deny leave to amend a complaint past the deadline established" where the movant has been "careless in developing his claims or where he has failed to satisfactorily account for his failure to do so." *Tawaab*, 729 F. Supp. 2d at 769.

Defendants Qintera and Roosevans argue that good cause is lacking here, since Fidelity "has known for over a year that it wanted to attempt to amend its complaint to again seek to add a claim for paramount equity," and has "conducted discovery largely with an eye towards resurrecting such a claim." ECF No. 113 ¶ 13. Similarly, Defendant Stoddard asserts that "[a]lthough Plaintiff was fully aware, no later than the date of the [January 29, 2014] Memorandum Opinion, that its Complaint did not contain a claim for veil piercing on 'paramount equity' grounds, it carelessly and without explanation waited more than fourteen months to move to amend its Complaint to include that claim." ECF No. 114 at 8. The Court agrees.

Discovery indeed did not commence until after the amended pleadings deadline. Fidelity is therefore correct in noting that it uncovered previously unknown facts only once that deadline had passed. At first blush, these circumstances appear

to warrant a finding of good cause. However, Fidelity overstates the necessity of the previously unknown facts to its paramount equity claim and makes contradictory assertions regarding the novelty of the information. In its Reply Memorandum, Fidelity asserts that "new facts set forth . . . related to the undercapitalization of Qintera were obtained during discovery." ECF No. 125 at 9. But only two sentences later, and in the same paragraph, Fidelity asserts that it has "good cause for amending the Scheduling Order" because "all of the Defendants were already on notice from the original Complaint and the Amended Complaint that Plaintiff was asserting facts which could support an alter ego and enforcement of paramount equity theory of recovery." *Id.* 9-10.

Indeed, Fidelity can—and does—point to myriad paragraphs throughout the Amended Complaint, as well as "all of the allegations in Count III of the Amended Complaint for Unjust Enrichment," to show that it had previously put Defendants on notice of alter ego and paramount equity claims. *See* ECF No. 101; *id.* Ex. 9 at 6 n.1-4 (citing to, *inter alia*, paragraphs 20, 29, 30, 31, 32, 33, 34, 36, 43, 44, 45, 54, 61, 67, and 68 of the Amended Complaint that allege facts to support various facets of alter ego or paramount equity claims); *id.* 6 n.5 (referring the Court to Count III of the Amended Complaint, which alleges undercapitalization). In fact, in its Opposition

13

to Defendants Roosevans and Qintera's Motion for a Protective Order, ECF No. 102, Fidelity states that "the discovery topics [with respect to capitalization, corporate structure, roles of corporate officers, solvency of Defendant Qintera, affiliations, dual roles of officers and shared funding] about which Defendants now complain are relevant and were inquired into in good faith" during discovery, because Fidelity had already alleged the facts regarding these topics in its Amended Complaint.  See Pl.'s Opp. to Defs.' Mot. for Protective Order 4.

Paradoxically, in the instant case, Fidelity argues that its having alleged facts constituting a claim for paramount equity from the outset of the case bolsters its good cause showing, yet simultaneously argues that it did not have knowledge of these facts until the close of discovery and therefore could not have filed its motion earlier.  It is hard to imagine a clearer example of the phrase, "having your cake and eating it, too."  Fidelity's repeated assertions that it has alleged undercapitalization, lack of corporate formalities, and alter ego elements from the case's inception belie its claims of ignorance of facts to support those theories until over a year after its Complaint was filed.

The facts of this case are similar to those in Kolb v. ACRA Control, Ltd., 21 F. Supp. 3d 515 (D. Md. 2014), which involved

14

a breach of contract claim by a former employee against his employer. In *Kolb*, the plaintiff sought to add a claim for violation of the Maryland Wage and Payment Collection Law based on facts that he claimed he learned while deposing his employer's corporate designee. 21 F. Supp. 3d at 519. The defendants countered that the plaintiff "ha[d] been aware of the facts that allegedly form[ed] the basis of his [new] claim since the inception" of the case. *Id.* at 526. Finding the defendants' argument persuasive, Judge Grimm noted that, "[a]t a minimum, these facts, which Plaintiff certainly knew when he filed his original Complaint, would provide a sufficient basis" for his proposed amended claim. *Id.* at 527. Judge Grimm concluded that the plaintiff could "just as readily" have stated his proposed amended claim "when he filed his original Complaint or his timely First Motion to Amend as when he filed his Second Motion to Amend, more than four months after the deadline established by the Scheduling Order." *Id.* On the facts in *Kolb*, the plaintiff had not shown that he made diligent efforts to meet the scheduling deadline, and, though the Court found that his delay did not prejudice the defendants, his motion to amend was nevertheless denied. *Id.*

In this case, Fidelity filed the instant motion just under a year and a half after this Court ruled that its first Amended Complaint did not contain a claim for paramount equity. *See*

15

*Fidelity & Guaranty Life Ins. Co v. United Advisory Group, Inc. d/b/a Qintera, et al.*, WDQ-13-0040, 2014 WL 346630, at *9 & n.38 (D. Md. Jan. 29, 2014) ("[T]he amended complaint only asserts a claim for veil piercing based on fraud . . . rather than 'paramount equity,' which takes into account factors indicating a 'disregard of the corporate fiction.' If Fidelity wants to assert a claim for veil piercing against Stoddard and Roosevans on a basis other than fraud, it must seek to amend its complaint accordingly.") (citations and internal quotation marks omitted). It is evident from Fidelity's own arguments that it had knowledge sufficient to state a claim for veil piercing based on paramount equity when it filed its initial claim, or, in the alternative, when it filed its Amended Complaint.[2] Indeed, this

---

[2] Fidelity argues that filing the instant motion prior to February, 2015 would have been futile because it could not have succeeded in alleging paramount equity as an alternative veil piercing theory prior to the Maryland Court of Appeals decision in *Schlossberg v. Bell Builders Remodeling, Inc.*, 2015 WL 728784, at *1 (Feb. 20, 2015). In *Schlossberg*, the Court of Appeals clarified that paramount equity, by itself and without any additional allegations of fraud, can constitute a basis for corporate veil piercing. While Fidelity correctly characterizes the holding in *Schlossberg*, the contention that Fidelity could not have included an alternative claim for veil piercing based on paramount equity, *in addition to* its fraud claim, before February, 2015 is without merit.

This Court has repeatedly held that plaintiffs may allege veil piercing based on fraud or to enforce a paramount equity. *See Baltimore Line Handling, Co. v. Brophy*, 771 F. Supp. 2d 531, 554 (D. Md. 2011) ("The Maryland Court of Appeals has expressly declared that the corporate veil shall be pierced when necessary to enforce a paramount equity."); *Sirona Dental Systems, LLC v.*

knowledge comprises the crux of Fidelity's arguments in the pending discovery motions in this case. Given the Court's focus on "the timeliness of the motion to amend and the reason for its tardy submission," rather than the "substance of the proposed amended complaint," see *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 373-74 (D. Md. 2002), Fidelity's specious claim that the delayed discovery in the case created good cause to delay its filing is insufficient to overcome the Rule 16(b)(4) burden here.

Moreover, additional factors also weigh in favor of a denial of the addition of the paramount equity claim. Fidelity

---

*Stevenson Group, Inc.*, No. CCB-12-1253, 2013 WL 3875325, at *4 (D. Md. July 25, 2013) ("[T]here are two independent bases on which the court could pierce [the defendant's] corporate veil . . . . First, [the plaintiff] has alleged fraud. . . . Second, although no court in Maryland has apparently ever pierced the corporate veil to enforce a paramount equity   . . . this is a close question on the present facts, which conceivably could justify piercing the veil on equitable grounds.").

These cases are clear that plaintiffs may allege *both* fraud *and* paramount equity when making a veil piercing claim. That no Maryland Court has ever actually pierced a corporate veil on a theory of paramount equity alone does not preclude any party from making a paramount equity claim. Indeed, the *Schlossberg* Court explicitly stated that it was not ruling on whether a veil had been pierced based on paramount equity, but, rather, clarifying that paramount equity can serve as an independent basis for veil piercing, absent fraud. Fidelity had already alleged fraud at the time it filed its Amended Complaint. It would not have had to remove its fraud charge and assert *only* a paramount equity claim; indeed, precedent counsels that it may assert both. Accordingly, Fidelity's claim that *Schlossberg* accounts for its delay is unpersuasive.

17

did not file its request to file a second amended Complaint until nearly a year and a half after the Court ruled that Fidelity had not stated a claim for paramount equity in its first Amended Complaint. *Fidelity & Guaranty Life Ins. Co.*, 2014 WL 346630, at *9 n.38. Fidelity asserts that Defendants' arguments about the length of the delay are "hypocritical" given Defendants' admitted failure to file dispositive motions by the Scheduling Order's April 4, 2015 deadline, Fidelity's consent to an extension, which the Court granted. Pl.'s ECF No. 125 at 7; *see* ECF Nos. 110, 112. Fidelity is correct that the Court granted Defendants' consent motions to extend discovery and dispositive motions deadlines, and, in so doing, agreed to a modification of the Scheduling. Order. ECF Nos. 100, 112. Nevertheless, the high potential for prejudice Defendants face in the instant situation mitigates against permitting the proposed amendment to Fidelity's Complaint. Discovery has, for all intents and purposes, closed in this case. *See* ECF No. 79; ECF No. 101-9 at 5; ECF No. 113 at ¶ 56.

Fidelity argues that no prejudice exists because it does not anticipate conducting additional discovery related to a paramount equity claim, and because Defendants had ample notice of a possible paramount equity claim during the discovery period and could have taken discovery on such a claim at that time. Both of these arguments are unavailing. That Fidelity does not

anticipate taking additional discovery on its proposed amended Complaint is irrelevant, because the Court determines prejudice from the perspective of the non-moving party. *See Tawaab*, 729 F. Supp. 2d at 768-769. Defendants have devoted ample time in this case to fighting Fidelity's arguments that its Complaint and proposed Amended Complaint contained a claim for veil piercing on the basis of paramount equity. ECF No. 113; *id.* Ex. 2. Accordingly, Defendants have not taken discovery on this claim. As such, Defendants have not taken discovery on potential defenses to this claim, and thus would have to seek additional discovery if the amendment is permitted.

Moreover, after this Court ruled in January, 2014 that Fidelity's Amended Complaint did not state a paramount equity claim, counsel for Defendants continuously objected to lines of Fidelity's discovery which counsel believed to be related only to a claim of paramount equity, but which Fidelity argued was related to existing allegations of undercapitalization and alter ego in the Amended Complaint. *See* ECF No. 113 ¶ 27 n.13 & Ex. 1. Counsel for Defendants objected to these lines of discovery instead of taking their own discovery on what they believed to be a non-existent claim. While Defendants theoretically *could* have flouted what it reasonably believed was the Court's January, 2014 ruling on Fidelity's purported paramount equity claim, and taken discovery on factors underlying the paramount

equity doctrine rather than objecting to Fidelity's discovery on the matter, Defendants should not be penalized for conforming discovery to the Court's ruling.

Ultimately, although there is no evidence that Fidelity is proceeding in bad faith, Fidelity's lack of diligence and unnecessarily long delay in filing the instant motion, coupled with the absence of good cause and the high potential for prejudice to Defendants, warrant denial of the proposed amended Complaint.  Because Fidelity fails to show good cause for its proposed Scheduling Order modification under Rule 16(b)(4), the Court does not need to address Fidelity's amendment under Rule 15(a).

IV.  CONCLUSION

For the reasons stated above, Fidelity's motion to amend will be denied.

Dated: January 12, 2016

_____
William D. Quarles, Jr.
United States District Judge